Loney v. MHA v. Aetna                    CV-92-461-B   08/18/95
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF NEW HAMPSHIRE


H. Loney Construction Co., Inc.

     v.

Manchester Housing and Redevelopment Authority

     v.                                          Civil No. 92-461-B

Aetna Casualty and Surety Corporation



                          **O R D E R**

     H. Loney Construction moves for partial summary judgment on

Manchester Housing and Redevelopment Authority's ("MHRA") claim

for breach of warranty arising from Loney's alleged failure to

repair and install properly certain boilers provided for in the

construction contract.  Specifically, Loney asserts that the

contract did not require it to install additional gas pressure

regulator valves on the boilers and therefore it is not liable

for the cost to MHRA for acquiring and installing the valves.  In

addition, Loney argues that it is not liable for these costs

because the contract did not obligate them to do warranty work on

the boilers.  MHRA filed an objection to Loney's motion arguing

that the contract required Loney to install gas regulator valves

and to perform warranty work on the boilers.  For the following

reasons, I deny Loney's motion for summary judgment.

## I.  <u>BACKGROUND</u>

MHRA awarded a construction contract to Loney that included heating renovations and the construction of new boiler rooms in several of the MHRA's properties.  The facts surrounding the renovations are more fully discussed in my Order dated August 18, 1995.  Therefore, I confine my discussion to those facts relevant to the boiler issue only.

The contract specified the installation of Hydrotherm gas fired boilers, or an approved equivalent, and certain accessories.  Hydrotherm boilers come equipped with gas pressure regulator valves and no additional valves were among the listed accessories in the specifications.  However, the specifications required the boilers be installed pursuant to the manufacturer's recommendations, and Hydrotherm's recommendations specify that, "if gas pressure is above [the] limit, a pressure regulator must be installed, which must be a lock-up style."

Further, Drawing M-6 of the contract included a generic draining of a boiler and also indicated a gas regulator valve symbol on the drawing.  All parties bidding the job knew that the required boiler to be installed was the Hydrotherm and the

2

drawings indicated an additional symbol for gas regulator valves. The contract also provides that "[a]nything mentioned in the specifications and not shown in the drawings or shown in the drawings and not mentioned in the specifications shall be of like effect as if shown or mentioned in both." Finally, the contract also stated that the contractor was required to "[i]nstall drains at all low points in piping system and pressure regulators noted."

As provided in the contract, Loney installed the Hydrotherm boilers. On January 7 and March 14, 1991, MHRA informed Loney that it was satisfied with the new boilers in several buildings "for the purpose of commencing the boiler room equipment warranty."

Beginning in July 1991, the boilers failed to operate properly. The malfunctions were attributed to the boilers' failure to handle fluctuations in the gas pressure and required manual resetting. The engineering firm involved alerted Loney to its obligations under the warranty provisions in writing during July and August of 1991. In January 1992, just prior to the expiration of the first warranty period, MHRA informed Loney of continuing problems with the boilers in several buildings and directed Loney to seek an extension of the warranty from the

3

manufacturer in order to adequately address the problems. Similar correspondence was sent to Loney just prior to the expiration of the second warranty period in March 1992.

In response to MHRA's numerous requests for action, Loney responded by letter dated April 13, 1992, that "Loney Construction will fix or replace parts supplied by Hydrotherm, if they are warranty items, were on the punch lists of January 6, 1992 and March 9, 1992, and were not previously replaced."

The engineer who originally approved the installations for MHRA informed the Authority in July 1992 that according to the specifications, gas regulator valves, in addition to the ones accompanying the boilers, should have been installed by Loney as part of the original contract. Loney never completed the installation and repairs of the boilers to MHRA's satisfaction.

## II. DISCUSSION[1]

Loney seeks partial summary judgment on MHRA's claim as it relates to the Hydrotherm boilers. Loney makes two arguments:

---

[1]Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

(1) the contract did not require them to supply additional gas pressure valves; and (2) the warranty clause in the contract does not require them to fix the boiler problem because the problem resulted from a design defect in MHRA's plans. Accompanying its motion, Loney provides an affidavit from its engineer asserting that there is no basis in the contract for concluding that additional gas regulator valves were required.

In opposition, MHRA argues that the drawings and specifications clearly indicate that Loney was to provide additional gas regulator valves and that there are no exceptions for boilers in the warranty clause of the contract. Further, MHRA asserts that Loney acknowledged its duty to provide additional valves and do warranty work in writing and then reneged only after commencement of this lawsuit.

A.   **Obligation to Provide Additional Gas Regulator Valves**

Loney's claim that it was not obligated to install additional gas regulator valves is based upon two assumptions: first, that contract contained a latent ambiguity on the point; and second, that such ambiguities must be resolved in the contractor's favor as a matter of law. I reject Loney's claim because neither assumption is valid.

5

"The interpretation of a contract is a question of law to be determined by focusing on the language of the written contract, as it reflects the intent of the parties." BankEast v. Michalenoick, 138 N.H. 367, 369 (1994); Gamble v. University Sys., 136 N.H. 9, 13 (interpretation of unambiguous contract presents question of law). An ambiguity in contract language is found where there is more than one reasonable interpretation of the meaning of the contract language. Laconia Rod & Gun Club v. Hartford Accident & Indem. Co., 123 N.H. 179, 182 (1983). Under New Hampshire law, where there is ambiguity in the contract the intent of the parties and the true meaning of the contract are questions of fact. Angus Realty Corp. v. Exxon Corp., Case No. 92-304-B, slip op. at 8 (D.N.H. Aug. 11, 1993).

The only reasonable reading of the contract as a whole is that it obligated Loney to install whatever additional valves were necessary to comply with Hydrotherm's recommendations. As I noted previously, the contract specified Hydrotherm gas fired boilers or an approved equivalent. The specifications further required Loney to install the boilers in accordance with the manufacturer's recommendations. Since Hydrotherm boilers were installed and the manufacturer's recommendations specified that additional valves would be required in certain circumstances, the

6

contract plainly required the contractor to install additional valves if the specified circumstances were present. Nothing else in the contract calls this obvious conclusion into question.

Further, even if the contract contained a latent ambiguity on this issue, Loney would not be entitled to summary judgment. Loney has failed to identify any New Hampshire case which holds that a latent contractual ambiguity must be resolved in the contractor's favor as a matter of law. Since New Hampshire law specifies to the contrary that a contractual ambiguity ordinarily presents a fact question that must be resolved at trial, I could not grant Loney's summary judgment motion even if I determined that the contract was ambiguous.

B.   **Obligation to Perform Warranty Work**

Loney also makes the related claim that it is relieved of any warranty obligation because the need for additional work on the boilers resulted from a defect on the specifications. MHRA argues in opposition that the contract's warranty provisions required Loney to install an operable boiler system without exception. Further, MHRA notes that the conduct of the parties demonstrates an understanding that Loney was responsible for warranty work on the boilers.

7

As I previously noted, the plain language of the contract required Loney to install additional gas regulator valves when required by the manufacturer's recommendations. Since Loney does not disagree that Hydrotherm's recommendations required the installation of additional valves in circumstances presented by this case, it cannot blame its failure to install the regulators on any design defect.[2]

## III. CONCLUSION

For the foregoing reasons, I deny Loney's motion for summary judgment (document no. 83).

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

August 18, 1995

---

[2]Loney also argues that the approval of MHRA's engineer relieves them of any obligation under the warranty. If, however, the boiler problems resulted from Loney's failure to comply with the requirements of the contract, the subsequent error by the engineer does not erase their earlier failure to comply. See City of New Orleans v. Vicon, Inc., 529 F. Supp. 1234, 1244 (E.D. La. 1982).

cc:  James W. Craig, Esq.
     Frank P. Spinella, Jr., Esq.
     Joseph M. Corwin, Esq.