THEUNE, Respondent, v. CITY OF SHEBOYGAN and another, Appellants.

*No. 468.   Argued February 4, 1975.—Decided March 4, 1975.*
(Also reported in 226 N. W. 2d 396.)

HEFFERNAN, J., dissents.

For the appellants there was a brief and oral argument by *Clarence H. Mertz* of Sheboygan.

For the respondent there was a brief by *Chase, Olsen & Kloet,* and oral argument by *Alvin R. Kloet,* all of Sheboygan.

WILKIE, C. J. This is a class action brought by plaintiff-respondent, John Theune, president of the Sheboygan Professional Policemen's Association, as representative of approximately 92 city of Sheboygan police officers, members of the association, seeking wages or compensatory rest time on behalf of all the officers as against defendant, the city of Sheboygan, and the city's common council. This action covers overtime "work" performed by the police officers during two standby alerts in 1970. The police officers were placed on a "yellow alert" and were required to report their whereabouts to police headquarters, and to stand ready to report for duty on short notice. The officers claimed the standby time constituted work under the applicable ordinance [1] and statute. [2] Following a trial to the court,

---

[1] City of Sheboygan Gen. Ord. No. 173–65–66 provides:

"(b) Plus and Minus Hours

"All hours worked by any employee that are either more or less than the prescribed work week shall be plus or minus hours respectively. Plus hours shall be first credited to any employee's minus hours. Plus hours in excess of minus hours accumulated by an employee shall be reduced by awarding the equivalent time off at such time as the department head shall determine, during periods when the work load permits. Minus hours may be accumulated to the equivalent of two weeks of work hours. Minus hours in excess of this amount shall be deducted from the pay check immediately following the time during which such excess minus hours were incurred. All plus hours shall be reduced by compensatory time off within one year from the date that such plus hours were earned. However, police officers and city hall employees and Cemetery Commission employees in a class position below

judgment was rendered in plaintiff's favor for overtime pay in the amount of $32,759.42. Defendants appeal. We conclude that time spent on these standby alerts did not constitute work for which compensation was owed, and we therefore conclude that the judgment must be reversed.

On two weekends in June and July of 1970, plaintiff and his fellow officers were ordered on "yellow alert" by Oakley Frank, city of Sheboygan police chief. According to a department rule promulgated on July 9, 1969, such an alert entails the following:

> *"Yellow Alert*—Means that the officers must report their whereabouts to headquarters, and only people who are on vacation will be excluded. All personnel must obtain permission to leave the city." [3]

department heads, shall on the first payday after the last pay period in each year, be paid out at the rate determined in subsection 14 (b) for such plus hours as remain to their credit as of that date."

[2] Sec. 62.13 (7n), Stats., provides: "(7n) HOURS OF LABOR. The council of every city of the second, third or fourth class, shall provide for a working day of not more than eight hours in each twenty-four except in cases of positive necessity by some sudden and serious emergency, which, in the judgment of the chief of police, demands that such work day shall be extended beyond the eight-hour period at such time; and when such emergency ceases to exist, all overtime given during such emergency, shall be placed to the credit of such policeman, and additional days of rest given therefor."

[3] As a comparison consider the following classes of alerts contained in the same rule:

*"Green Alert*—Means a situation is developing. You need not report to headquarters; however, further information will be forthcoming and you are to make yourself reasonably available to receive same.

". . .

"3. *Red Alert*—Means that all personnel are to report to police headquarters in uniform unless otherwise directed. The determination whether men on vacation will be included will be dependent upon the nature of the alert.

A claim for compensation for the time spent on this standby alert was denied. The policemen's association asked the city to treat the question of overtime pay for this time as a negotiable item subject to collective bargaining, but the city refused this request also. Finally, in December of 1970, plaintiff commenced this present action. An order overruling a demurrer to the complaint was appealed to this court, and in February of 1973, the order was affirmed.[4] The court held that because the complaint alleged that standby time was "work," it could withstand a demurrer. The court did not, however, resolve the merits of the case; rather it said that while standby time could constitute work, a factual hearing was essential:

"The brief of the defendants contends, however, that the 'Standby Alert' did not constitute 'work' for which the plaintiff is entitled to compensation. The contention is that, to be compensable, the activities of the police officer during the 'Standby Alert' had to be those of a police officer in the usual course of his employment. We cannot accept that proposition as a matter of law.
"The cases upon which the defendants rely make clear that a determination of the compensability of 'standing by' or being 'subject to call' can only be made after the evidence has been submitted. The cases relied upon indicate that whether or not the status of awaiting a call to duty constitutes work depends upon the facts of the particular case. There are indeed cases where 'they also serve who only stand and wait.' " [5]

No legal criteria for evaluating the facts of a particular case were set forth.

"4. *White Alert*—Means all clear—no further need to call in—resume normal status."

[4] *Theune v. Sheboygan* (1973), 57 Wis. 2d 417, 204 N. W. 2d 470.

[5] *Id.* at page 421.

Following the affirmance by this court of the order overruling the demurrer, a trial to the court occurred on July 30, 1973. Eleven witnesses testified, including the police chief, nine police offficers, and the city's personnel director. In addition, pursuant to an agreement at the pretrial conference, plaintiff submitted affidavits of 66 other police officers.

Police Chief Frank explained the procedure following announcement of a yellow alert. The police officer calls the station, leaving his name, phone number, and location. If the officer is thereafter ordered to report for duty he is expected to arrive at the station within one-half hour of the call, in uniform, and not under the influence of intoxicants. Chief Frank said an officer's failure to abide by the rules would be met with disciplinary action and he indicated that some officers were in fact disciplined during the alerts involved here. He further testified that no officers had requested permission to leave the city during the alert; however, his policy on such requests was that they would be denied unless the officer was "going somewhere within close proximity of the city."

Chief Frank said the two alerts were called because of reports that the city of Sheboygan would be "torn apart" by a motorcycle gang known as "The Outlaws." He said the gang on one occasion did, in fact, encamp on the perimeter of the city. He expressed the opinion that having the city's police officers available for immediate call-up in case trouble started was "advantageous to the police protection of the city as to the property and people."

The police officers who testified at trial and those who submitted affidavits all explained how the yellow alert restricted their freedom. The officers had to stay near a telephone at a location close enough to the station to allow reporting for duty within a half hour of receiving

a call. They required a ready means of transportation which meant, in many cases, leaving the family car at home. Finally, they had to refrain from drinking alcoholic beverages. Most of the officers stayed at home with their families during the alerts. Camping and fishing trips, picnics, and plans for golfing and other athletic activities were all canceled. Some officers indicated they did not feel free to attend church or go to weddings, or to the store, where they would be away from a telephone for longer than a few minutes. A few officers had to abandon plans of working on the weekend for Road America, and one officer was unable to assist with harvesting on his father's farm.

Following the trial, the court found for the plaintiff and his fellow officers. The court allowed the defendants the option of granting compensatory time off or paying a money judgment. When the defendants failed to inform the court of their choice within the thirty-day time limit set by the court, the money judgment was entered which has been appealed.

The fundamental question to be determined here is whether the standby alert constituted compensable work time. The trial court found for the plaintiff, after concluding that "work" constituted selling a portion of one's lifespan, putting it at the discretionary use and control of the employer. Because the standby alert limits an officer's "freedom to do what he wishes to do *if* he were a free agent," the trial court ruled that plaintiffs must be compensated for their time.

The precise question before us narrows down to whether the time spent on the standby yellow alert was "work." The ordinance and statute under which plaintiff seeks compensatory wages and rest time for overtime work do not define "work." Nor do any prior decisions of this court provide guidance concerning this problem.[6]

---

[6] Defendants do cite two workmen's compensation cases, *State YMCA v. Industrial Comm.* (1940), 235 Wis. 161, 292 N. W. 324,

*Theune v. Sheboygan,*[7] the first appeal brought to the supreme court in this matter, held that waiting time *could* constitute work, but no criteria were set forth.

Federal cases decided under the maximum wage and overtime provisions [8] of the Fair Labor Standards Act of 1938 [9] are highly relevant to the question involved in the instant case.[10]

The United States Supreme Court held in *Armour & Co. v. Wantock,*[11] the test of whether waiting time is working time is whether under all the facts the time was spent predominately for the employer's benefit or the employee's benefit:

---

and *Brienen v. Wisconsin Public Service Comm.* (1917), 166 Wis. 24, 163 N. W. 182, in which the court held that certain injuries received while an employee was off duty but on call were not compensable. These cases are of dubious value here because the test of whether an injury is compensable depends upon whether "at the time of the injury, the employe is performing service growing out of and incidental to his employment." Sec. 102.03 (1) (c) 1, Stats. The question whether the employee was performing work meriting remuneration at the time is an entirely separate question.

[7] 57 Wis. 2d at 421.

[8] 29 U. S. Code, sec. 206 (1970), provides in part:

"**Minimum wage.**

"(a) Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, . . . wages at the following rates:"

29 U. S. Code, sec. 207 (1970), provides in part:

"**Maximum hours.**

"(a) (1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

[9] 29 U. S. Code, sec. 201, *et seq.*

[10] For a general survey of these cases, *see* Annot. *Working Time—Call or Waiting Time,* 3 A. L. R. Fed. 675.

[11] (1944), 323 U. S. 126, 133, 65 Sup. Ct. 165, 89 L. Ed. 118.

"Of course an employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen. Refraining from other activity often is a factor of instant readiness to serve, and idleness plays a part in all employments in a stand-by capacity. Readiness to serve may be hired, quite as much as service itself, and time spent lying in wait for threats to the safety of the employer's property may be treated by the parties as a benefit to the employer. Whether time is spent predominately for the employer's benefit or for the employee's is a question dependent upon all the circumstances of the case."

In *Armour* the employees were private fire fighters who sought compensation for "off duty" but "on call" time spent in a fire hall on the employer's premises. They were not permitted to leave the hall except to eat their evening meal at a nearby restaurant. In affirming a judgment awarding compensation for on-call time, the court said in part:

" '. . . they were under orders, liable to be called upon at any moment, and not at liberty to go away. They were none the less on duty when inactive. Their duty was to stand and wait.' "

The facts in the instant case are quite different, however, because plaintiff and his fellow officers were not confined to the police station unable to be with friends and family. Instead, they were free to spend the on-call time for their own purposes as long as they stayed near a telephone and in the city of Sheboygan. The facts show they "waited to be engaged" rather than being "engaged to wait." [12]

The administrator of the Wage and Hour Division of the United States Department of Labor has promulgated

[12] *Skidmore v. Swift & Co.* (1944), 323 U. S. 134, 137, 65 Sup. Ct. 161, 89 L. Ed. 124 (reversing court of appeals decision that held as a matter of law that waiting time could not be working time).

a number of regulations implementing the Fair Labor Standards Act. Concerning these regulations the supreme court has said:

"We consider that the rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. . . ." [13]

The regulation entitled "on-call time" provides as follows:

"An employee who is required to remain on call on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes is working while 'on call.' An employee who is not required to remain on the employer's premises but is merely required to leave word at his home or with company officials where he may be reached is not working while on call. (Armour & Co. v. Wantock, 323 U. S. 126 (1944); Handler v. Thrasher, 191 F. 2d 120 (C. A. 10, 1951); Walling v. Bank of Waynesboro, Georgia, 61 F. Supp. 384 (S. D. Ga. 1945).)" [14]

This principle has been relied on by numerous courts denying compensation to employees who are on call but away from the employer's premises. In *Irwin v. Clark* [15] the Ninth Federal Circuit Court of Appeals denied compensation to plaintiff truck drivers who were employed by an oil field service company, required to keep the employer advised of their phone number, and on call twenty-four hours a day. In *Dumas v. King* [16] the Eighth Circuit Court of Appeals denied compensation to the engineer of an ice company who was also required to leave his phone number with the employer and was on

[13] *Id.* at page 140.
[14] 29 CFR 785.17 (1972).
[15] (9th Cir. 1968), 400 Fed. 2d 882.
[16] (8th Cir. 1946), 157 Fed. 2d 463, 466.

call twenty-four hours a day in case of emergency.[17] Defendants have cited no cases holding that an employee on call free to stay at home and socialize with friends and family may be compensated for such on-call time. Defendants do rely on the 1970 case of *Detling v. United States*[18] where the United States Court of Claims awarded compensation to an employee on call while "at home." However, the employee was a licensed merchant marine engineer and his home was a ship docked or anchored in a harbor. While on a twenty-four-hour port watch, the engineer had an eight-hour duty period followed by sixteen hours "off duty" in his quarters, but on call. However, during such time (a) no other licensed engineer was "on duty," (b) other members of the crew were given shore leave, and (c) the engineer and the deck officer were in joint command of the boat. The engineer thus had substantial responsibilities and was confined to the boat, even though he was free to spend the time in his own cabin. Here again, the facts in the instant case are quite different. The police officers were not required to stay at the police station; their position would be more comparable to that of a ship crewmember off duty and on shore leave who might be required to leave

[17] *See also: Super-Cold Southwest Co. v. McBride* (5th Cir. 1941), 124 Fed. 2d 90, 92 ("[T]he record which shows that a person 'on call' merely had to leave his telephone number or place where he could be found is not proof that he was engaged in work either regular or overtime."); *Baca v. United States* (U. S. Ct. of Cl. 1960), 150 Ct. Cl. 70, 77, certiorari denied, 364 U. S. 892, 81 Sup. Ct. 224, 5 L. Ed. 2d 188 (". . . time spent while waiting to perform actual labor constitutes working time under some circumstances and, therefore, is compensable. However, it is characteristic of the cases so holding that they involved situations where the employee was under orders from the employer to wait at a particular place, the employee was liable to be called upon at any moment for the performance of actual labor, and he was not at liberty to go away for the purpose of engaging in other activities of his own choice.")

[18] (U. S. Ct. of Cl. 1970), 432 Fed. 2d 462.

a telephone number where he could be reached, but who otherwise would be completely free of responsibilities.[19]

We conclude that the plaintiff and his fellow officers are not entitled to compensation, primarily because they were not required to stand by at the police station but rather were permitted to stay at home, or travel any place in the city of Sheboygan where they could quickly be reached by telephone. Although the officers were inconvenienced, they were basically free to spend the standby time for their own purposes with their family and friends. The restrictions were not so significant that it can be fairly said that the officers performed work entitling them to compensation.

*By the Court.*—Judgment reversed.

HEFFERNAN, J., dissents.

