Sullivan
No. 93-157

BANKEAST

v.

CHARLES MICHALENOICK, JR.

March 25, 1994

*McLane, Graf, Raulerson & Middleton,* of Manchester (*Kevin M. Leach* on the brief and orally), for the plaintiff.

*Ekberg & Associates,* of North Conway (*Donald M. Ekberg* on the brief and orally), for the defendant.

THAYER, J. The defendant, Charles Michalenoick Jr., appeals from an order of the Superior Court (*Morrill,* J.) granting plaintiff BankEast's renewed motion for summary judgment in its action to recover on a loan guarantee. The defendant makes a variety of arguments, only one of which we need address here: that the trial court erred as a matter of law in determining that foreclosure proceeds did not constitute a paydown of principal on the loan secured so as to relieve the defendant from liability under the guarantee. We reverse.

This case previously came before this court on an appeal from an earlier order granting summary judgment. *BankEast v. Michalenoick,* 135 N.H. 65, 599 A.2d 500 (1991). We found there to be a material fact in dispute as to the amount of principal that had been paid on the note, and thus reversed the judgment and remanded the case for trial. *Id.* at 66–67, 599 A.2d at 501. For procedural reasons, we did not rule on the legal effect of the foreclosure proceeds, but remanded that issue for consideration by the trial court. *Id.* at 66–67, 599 A.2d at 501–02.

We will not repeat the facts set forth in our earlier opinion. The parties have produced new affidavits clarifying certain facts that affect the issue before us. Before the principal debtor's default on the $800,000 note, payments in the amount of $240,712.64 were made to the bank, representing $35,316.14 in principal and $205,396.50 in interest. Thus at the time of default, $764,683.86 remained payable on the note. During the time in which the plaintiff was attempting to

enforce the terms of the guarantee, it foreclosed on the loan collateral, obtaining a total of $635,276.62, which was applied to reduce the debt to $129,407.24.

■ Summary judgment is appropriate only where, after considering all of the evidence in the light most favorable to the non-moving party, the trial court determines that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Horse Pond Fish & Game Club v. Cormier*, 133 N.H. 648, 653, 581 A.2d 478, 481 (1990). Here, on the undisputed facts, the plaintiff was not entitled to judgment.

■■ A guarantor's exposure to liability depends upon the terms of the contract. *Manchester Bank v. Industrial Dev. Auth.*, 119 N.H. 14, 16, 396 A.2d 558, 560 (1979). The interpretation of a contract is a question of law to be determined by focusing on the language of the written contract, as it reflects the intent of the parties. *R. Zoppo Co. v. City of Dover*, 124 N.H. 666, 670–71, 475 A.2d 12, 15 (1984). This intent is determined from the agreement taken as a whole, *Manchester Bank supra*, and by construing its terms according to the common meaning of their words and phrases. *Mast Rd. Grain & Bldg. Mat's Co. v. Piet*, 126 N.H. 194, 197, 489 A.2d 143, 145 (1985). The relevant terms of the guarantee provide:

"1. GUARANTY OF PAYMENT AND PERFORMANCE OF OBLIGATIONS.

In consideration of a loan from the Bank to Richard Michalenoick and his corporation in the amount of $800,000 the undersigned (the "Guarantor") hereby guarantees to the extent of up to $100,000 (and as may be reduced pursuant to paragraph 9 herein) that (a) the Debtor will duly and punctually pay . . . all indebtedness . . . now or hereafter owing . . . (collectively the "Obligations" and individually an "Obligation"). This Guaranty is an absolute, unconditional and continuing guaranty of the full and punctual payment and performance by the Debtor of the Obligations to the extent of $100,000 and not of their collectability only and is in no way conditioned upon any requirement that the Bank first attempt to collect any of the Obligations from the Debtor or resort to any security or other means of obtaining payment of any of the Obligations or upon any other contingency whatsoever. Upon any default by the Debtor in full and punctual payment and strict performance of the Obligations, the liabilities and obligations of the Guarantor here-

under shall, at the option of the Bank, become forthwith due and payable to the Bank without demand or notice of any nature, all of which are expressly waived by the Guarantor. Payments by the Guarantor hereunder may be required by the Bank on any number of occasions.

9. REDUCTION.

This guarantee shall be reduced to the extent of any principal paydown on the Obligations."

There is no dispute that the guarantee was to be reduced by the paydown of "any" principal on the note. Nor is it disputed, as the plaintiff conceded in oral argument, that the guarantee applies to the first $100,000 of principal to be paid on the loan. We need only determine here whether the term "principal paydown," as contained in this guarantee, includes the application to the principal of the foreclosure proceeds. The trial court found, and the plaintiff argues, that the guarantee's language "reflects the parties' clear intention that Mr. Michalenoick's obligations on the note would not be reduced by proceeds recovered from the foreclosure sale of the debtor's real estate and other assets." The plaintiff argues this point based upon the language in paragraph one of the guarantee that allows the bank to pursue the guarantor even absent foreclosure or "resort to any security." Thus the plaintiff argues that it was the parties' intention to give the bank the discretion as to whether or not to foreclose on the debtor's property without affecting the guarantee.

The defendant concedes that the bank had the right to pursue him as guarantor absent any attempt to foreclose on the other collateral, but argues that in this case the bank chose to foreclose. He contends that after this choice was made, the proceeds from this foreclosure were applied to principal, that they exceeded the $100,000 of his guarantee liability, and that they thus extinguished the guarantee by its own terms. We find the defendant's argument more persuasive.

Paragraph nine of the guarantee states clearly that the guarantor's obligation shall be reduced by *any* paydown on the underlying note's principal. The term does not specify that the paydown need be made by the principal obligor, nor does it limit the paydown to monies paid in the ordinary course of monthly installments. The plaintiff urges that we consider a similar case, *University Savings Association v. Miller*, 786 S.W.2d 461 (Tex. Ct. App. 1990), which involved a guarantee of the first ten percent of a loan. The Texas court determined that foreclosure proceeds would not apply to make

up this ten percent or to release the guarantor, based in part upon a term that allowed the bank discretion in whether or not to foreclose on the note. *Id.* at 463. We do not find this case persuasive, however, because the court also based its opinion in part upon another term in the guarantee contract that specifically allowed the bank "to apply the [foreclosed upon] security to the unguaranteed portion of the debt before applying it to the indebtedness guaranteed by Miller." *Id.* The instant guarantee, on the contrary, has no provision allowing the bank such leeway to apply foreclosure proceeds.

As noted above, the guarantee applied only to the first $100,000 of principal owing on the note. Because the guarantee does not specify the source of the paydown required to reduce the $100,000 and release the guarantor, or that foreclosure proceeds might be otherwise applied than to the front end of the note's obligations, we find that the guarantee requires reduction by the application of the foreclosure proceeds. The trial court erred in granting summary judgment in favor of the plaintiff.

*Reversed.*

All concurred.