Public Employee Labor Relations Board
No. 95-019

APPEAL OF AFSCME LOCAL 3657, LONDONDERRY POLICE EMPLOYEES

(New Hampshire Public Employee Labor Relations Board)

August 12, 1996

*Craig, Wenners, Craig & Casinghino, P.A.*, of Manchester (*Vincent A. Wenners, Jr.* on the brief and orally), for AFSCME Local 3657, Londonderry Police Employees.

*Devine, Millimet & Branch, P.A.*, of Manchester (*Mark T. Broth* and *Diane Murphy Quinlan* on the brief, and *Mr. Broth* orally), for the Town of Londonderry.

THAYER, J.The American Federation of State, County and Municipal Employees Local 3657, Londonderry Police Employees (union) appeals the decision of the New Hampshire Public Employee Labor Relations Board (PELRB) that its grievance against the Town of Londonderry (town) is non-arbitrable. We affirm.

The following facts are not disputed for purposes of this appeal. In 1993, the City of Manchester and its subdivision, the Manchester Airport Authority (MAA), constructed a new airport terminal building located in the town. As a result of negotiations leading up to this construction, the town believed that the MAA had agreed that the town's police force would provide airport police services for the new terminal. In violation of the town's understanding of this agreement, the MAA issued an open request for bids to provide police services for the terminal. The town sought to enjoin the bidding process, but the Superior Court (*Mangones*, J.) denied the town's petition for a temporary restraining order. The town subsequently submitted a bid to provide airport police services for the new terminal. The bid proved unsuccessful, and the contract was awarded to the Rockingham County Sheriff's Department. The town decided not to pursue further litigation. Its motion for voluntary nonsuit without prejudice was granted by the superior court in August 1993.

The union filed a grievance based on the theory that the town's decision not to seek enforcement of its alleged contractual right to have its police force provide airport police services for the new terminal violated the collective bargaining agreement (CBA) between the union and the town. The town responded by filing an unfair labor practice charge against the union, seeking to enjoin the union from submitting its grievance to arbitration. On October 6, 1994, the PELRB ruled that the union's grievance was non-arbitrable and enjoined any further arbitration proceedings. The union's motion for rehearing was denied, and this appeal followed.

 The standard of review for appeals from orders of the PELRB is provided by RSA 541:13 (1974). *See Appeal of State of N.H.*, 138 N.H. 716, 719–20, 647 A.2d 1302, 1305 (1994). A party seeking to set aside or vacate an order of the PELRB must show that the order is contrary to law or, by a clear preponderance of the evidence, that the order is unjust or unreasonable. RSA 541:13. Findings of fact by the PELRB are presumed lawful and reasonable. *Id.*

 In *Appeal of Westmoreland School Bd.*, 132 N.H. 103, 564 A.2d 419 (1989), we adopted four principles to guide the PELRB and this court on appellate review in determining whether a dispute is arbitrable under an arbitration clause in a CBA:

> (1) arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit . . . ; (2) unless the parties clearly state otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator; (3) a court should not rule on the merits of the parties['] underlying claims when deciding whether they agreed to arbitrate; and (4) under the "positive assurance" standard, when a CBA contains an arbitration clause, a presumption of arbitrability exists, and in the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail . . . .

*Id.* at 105–06, 564 A.2d at 420–21 (quotations, citations, and brackets omitted).

 It is undisputed that the CBA does not by its terms grant the arbitrator authority to determine arbitrability. Absent such a contractual provision, the PELRB has the "discretion to determine whether a dispute involves a matter covered by a collective bargain-

ing agreement." *Appeal of Hinsdale Fed'n of Teachers*, 138 N.H. 88, 90, 635 A.2d 480, 481 (1993). The CBA defines a grievance as "an alleged violation of any of the provisions of this Agreement." The parties agree that no provision of the CBA expressly excludes the union's grievance from arbitration.

The union argues that, absent an express exclusion, a conclusory allegation that the CBA has been violated is sufficient, without more, to require submission of the grievance to arbitration. According to the union, the scope of the PELRB's inquiry is limited to determining whether the grievance recites that a provision of the CBA has been violated. This is necessarily so, the union maintains, because any substantive review of the CBA would inappropriately involve the PELRB in the merits of the case.

■ We reject this argument. The "positive assurance" test adopted in *Westmoreland* raises a presumption of arbitrability that, absent an express exclusion, may be defeated only by "the most forceful evidence of a purpose to exclude the claim from arbitration." *Westmoreland*, 132 N.H. at 106, 564 A.2d at 420–21. *Westmoreland* makes clear, however, that the language of the contract itself may provide that "forceful evidence." In *Westmoreland*, we reversed a PELRB decision ordering a school board to process a grievance based on the non-renewal of a non-tenured teacher's contract. The CBA, as in this case, defined a grievance as an "alleged violation." *Id.* at 106–07, 564 A.2d at 421. In deciding whether the parties had agreed to arbitrate the dispute, we described the appropriate inquiry as "whether we may determine with positive assurance that the CBA is not susceptible of an interpretation that covers the dispute." *Id.* at 106, 564 A.2d at 421. We then examined the "relevant language of the CBA," *id.*, and concluded that the CBA was not susceptible of a reading covering the dispute. *Id.* at 109, 564 A.2d at 422.

■ The lesson of *Westmoreland* is that the PELRB's duty to determine arbitrability cannot be avoided simply because it requires a limited review of a CBA. *Cf. Independent Lift Truck Builders Un. v. Hyster Co.*, 2 F.3d 233, 236 (7th Cir. 1993) (rule that arbitrability is to be decided by courts takes precedence over rule that courts are not to decide merits of underlying dispute); *Morristown Daily Record v. Graphic Com., Local 8N*, 832 F.2d 31, 34 (3d Cir. 1987) (although question of arbitrability "may entail some probing of preliminary substantive issues, that requirement will not relieve courts of the duty to decide arbitrability"). The overriding concern is "whether the contracting parties have agreed to arbitrate a particular dispute." *Westmoreland*, 132 N.H. at 109, 564 A.2d at 423.

Although the PELRB is not an arbitrator, it is empowered to determine as a threshold matter whether the dispute falls within the scope of the parties' agreement to arbitrate, even if this requires interpreting the CBA to the extent necessary to determine whether the dispute presents a "colorable issue of contract interpretation." *Id.*

The union claims that the town's failure to pursue its alleged contractual right for its police force to provide airport police services violated Article 7, section 4(B) and Article 9 of the CBA. Article 7, section 4(B) provides, in pertinent part, that "the Town agrees that it will not aid, promote, or finance another labor group or organization purporting to engage in collective bargaining or make any agreement with any such group, organization, or individual which would violate any rights of the Union under this Agreement or the Law." Article 9 states, in pertinent part, that "the Town agrees not to engage in any lockout."

We agree with the PELRB and hold that the union's grievance is non-arbitrable because the CBA is "not susceptible of a reading which covers this dispute." *Westmoreland*, 132 N.H. at 109, 564 A.2d at 422. The town's decision not to continue its efforts to obtain the airport police work for its police force, and by extension the union, cannot plausibly be described as aiding, promoting, or financing "another labor group or organization purporting to engage in collective bargaining." The MAA, not the town, selected the Rockingham County Sheriff's Department, and the union has not alleged any collusion between the town and the sheriff's department or the MAA. Consequently, the union has not alleged a violation of this provision. A lockout is "a withholding or cessation of furnishing work by an employer to his employees in order to gain a concession from them." *Appeal of Simplex Wire & Cable Co.*, 131 N.H. 40, 45, 554 A.2d 835, 838 (1988) (quotation omitted). Again, it was the MAA and not the town that selected the Rockingham County Sheriff's Department over the Londonderry police. The union's grievance thus cannot plausibly be read as alleging that the town violated the lockout provision. In short, the union "takes the contractual language of the CBA provision[s] it relies on too far out of context for us to conclude that the parties intended to arbitrate this dispute." *Westmoreland*, 132 N.H. at 109, 564 A.2d at 423.

The union argues in the alternative that the PELRB should be required to delay its determination of substantive arbitrability until *after* arbitration has been completed, or until after an arbitrator has determined arbitrability in a preliminary hearing, so that the

PELRB will have the benefit of a developed record in reaching its decision. We reject this proposal. Prior determination of arbitrability by the PELRB serves the useful purpose of avoiding unnecessary submission of non-arbitrable disputes to arbitration, with the waste of time and resources that entails. Moreover, *Westmoreland* plainly contemplates that the PELRB has discretion to decide arbitrability prior to arbitration. *See id.* We are not persuaded of any infirmity in this result.

*Affirmed.*

All concurred.