Public Employee Labor Relations Board
No. 96-524

APPEAL OF TOWN OF BEDFORD

(New Hampshire Public Employee Labor Relations Board)

March 10, 1998

*Upton, Sanders & Smith*, of Concord (*Barton L. Mayer* and *Lauren S. Irwin* on the brief, and *Mr. Mayer* orally), for the petitioner.

*Michael C. Reynolds*, of Concord, by brief and orally, for the respondent, the State Employees' Association of New Hampshire, Inc., S.E.I.U., Local 1984.

BROCK, C.J. The petitioner, the Town of Bedford (town), appeals a decision of the New Hampshire Public Employee Labor Relations Board (board) concluding that the town breached the collective bargaining agreement (CBA) by refusing to process several employee grievances to arbitration. We reverse.

The State Employees' Association of New Hampshire, Inc., S.E.I.U., Local 1984 (union), which is the certified bargaining agent for the Bedford Police Association (association), and the town negotiated a CBA governing employment terms for the association members. In 1995, two police officers filed grievances with the town claiming that they were entitled to overtime pay under section 7.6 of the CBA. Section 7.6 provides:

> In all cases where a unit employee is called back to work after having left the premises, and more than one (1) hour before his/her next scheduled return to duty, he/she shall be paid for a minimum of three (3) hours at the overtime rate for each such call back. . . . Court appearances, as required by the Town, during an employee's off-duty hours shall be paid the difference between a three two-hour minimum call back at the overtime rate and any fee paid by the court for appearance.

Officer Durham filed a grievance after the town denied him call back pay for his attendance at an arbitration hearing for a grievance, which he had initiated, regarding his performance evaluation. The town concluded that Durham's grievance over call back pay was not an arbitrable matter under the CBA. The town also denied Sergeant Caverly's request for call back pay for attending and testifying at Durham's arbitration hearing because the union, not the town, subpoenaed him. The town concluded that the matter was not arbitrable under the CBA. Lastly, the town denied Caverly's grievance that he was entitled to call back pay for his off-duty time spent interviewing for a promotion. The town concluded that the interview was not work qualifying for overtime pay, and that the matter was not arbitrable.

Pursuant to RSA 273-A:5, I(h) (1987), the union filed unfair labor practice complaints with the board alleging breach of the CBA for the town's refusal to process to arbitration Durham's and Caverly's grievances. After a hearing, the board concluded that: (1) the officers' grievances were all claims for benefits conferred under the CBA; (2) the town failed to overcome a presumption of arbitrability under the "positive assurance" test; and (3) the town's refusal to process the grievances to arbitration breached the CBA. The board then ordered the parties to arbitration. The board denied the town's motion for rehearing, and this appeal followed.

Although the primary function of the board and this court "is simply to determine whether or not [the union] has raised a colorable issue of contract interpretation, without deciding it on the merits," *Appeal of Westmoreland School Bd.*, 132 N.H. 103, 109, 564 A.2d 419, 423 (1989), the issue in this case requires an interpretation of the CBA to determine whether the town and union have agreed to arbitrate a particular matter. *See id.* "[W]e will not overturn the [board's] decision unless, by a clear preponderance of the evidence, it is erroneous as a matter of law, unjust, or unreasonable." *Id.* at 105, 564 A.2d at 420 (citations omitted). The party seeking to set aside the board's order "must show that the order is contrary to law or, by a clear preponderance of the evidence, that the order is unjust or unreasonable." *Appeal of AFSCME Local 3657*, 141 N.H. 291, 293, 681 A.2d 100, 102 (1996); *see* RSA 541:13 (1997).

The principles guiding our consideration of whether the parties' dispute is arbitrable include:

(1) arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit; (2) unless the parties clearly state otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator; (3) a court should not rule on the merits of the parties' underlying claims when deciding whether they agreed to arbitrate; and (4) under the "positive assurance" standard, when a CBA contains an arbitration clause, a presumption of arbitrability exists, and in the absence of any express provision excluding a particular grievance from arbitration, only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.

*Appeal of AFSCME Local 3657*, 141 N.H. at 293, 681 A.2d at 102 (ellipses and brackets omitted); *see AT&T Technologies v. Communications Workers*, 475 U.S. 643, 648-50 (1986).

"We examine first the relevant language of the CBA." *Appeal of Westmoreland School Bd.*, 132 N.H. at 106, 564 A.2d at 421. A presumption of arbitrability exists if the CBA contains an arbitration clause, *see id.* at 105, 564 A.2d at 420, but the court may conclude that the arbitration clause does not include a particular grievance if it determines "with positive assurance that the CBA is not susceptible of an interpretation that covers the dispute." *Appeal of AFSCME Local 3657*, 141 N.H. at 294, 681 A.2d at 102 (quotation omitted); *see AT&T Technologies*, 475 U.S. at 650. Furthermore, "[t]he principle that doubt should be resolved in favor of arbitration does not relieve a court of the responsibility of applying traditional principles of contract interpretation in an effort to ascertain the intention of the contracting parties." *Affiliated Food Distributors, Inc. v. Local Union No. 229*, 483 F.2d 418, 420 (3d Cir. 1973), *cert. denied*, 415 U.S. 916 (1974).

The central issue in dispute between the parties is whether the town is required to process to arbitration grievances concerning call back pay for officers attending arbitration proceedings for their own benefit or at the union's request, and for an officer interviewing for a promotion during off-duty hours. The CBA defines a grievance as "a written dispute, claim or complaint" filed by the town or association arising out of an interpretation or application of a provision of the CBA. The grievance procedure established by the CBA requires association members to file their grievances with the chief of police and to file appeals, first, with the town manager, and second, the town council. Association members may appeal decisions of the town council to arbitration. The CBA, however, limits the authority of the arbitrator "to the terms and provisions of this Agreement, and to the specific questions which are submitted." The arbitrator may not "add to, subtract from, modify, or otherwise change any of the terms or provisions." The CBA does not explicitly give the arbitrator authority to determine whether a dispute is arbitrable; thus, the board and this court have authority to determine whether the CBA covers the disputed matter. *See Appeal of AFSCME Local 3657*, 141 N.H. at 293-94, 681 A.2d at 102.

The town denied the arbitrability of the grievances based upon its interpretation of the CBA. On appeal, the town argues that call back pay applies only to "work" in the ordinary meaning of the word. The town asserts that the parties would not have included specific provisions in the CBA to provide for compensation of activities such as tuition reimbursement or union convention attendance if they intended the term "work" to have a more expansive meaning. During negotiations for the CBA, the union proposed language

specifically including "attendance at court during off-duty hours, training, department meetings, and emergencies" as call backs qualifying for overtime pay under section 7.6. The town argues that the exclusion of this language from section 7.6 of the final CBA demonstrates the parties' intent to confine "work," at least for the purposes of overtime pay, to its ordinary and common meaning.

■ ■ We determine whether the CBA requires the parties to arbitrate the grievances in this case by focusing on the language of the CBA, as it reflects the parties' intent. *Cf. BankEast v. Michalenoick*, 138 N.H. 367, 369, 639 A.2d 272, 273 (1994) (interpreting loan guarantee contract by analyzing contract language in light of parties' intent). "This intent is determined from the agreement taken as a whole, and by construing its terms according to the common meaning of their words and phrases." *Id.* (citation omitted). The common meaning of "work" has been defined as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Tennessee Coal Co. v. Muscoda Local*, 321 U.S. 590, 598 (1944) (interpreting Fair Labor Standards Act). Under this definition, time that employees may freely spend engaged in personal activities without being required to remain on the work site have been held not to be "work." *See Hill v. United States*, 751 F.2d 810, 814 (6th Cir. 1984), *cert. denied*, 474 U.S. 817 (1985); *Theune v. City of Sheboygan*, 226 N.W.2d 396, 401 (Wis. 1975). The classification of an activity as "work" turns upon which party primarily controls the activity and benefits from it. *See Tennessee Coal Co.*, 321 U.S. at 598-99; *Theune*, 226 N.W.2d at 400.

■ Using this definition of "work," we conclude that the board erred in finding that the officers' grievances stated claims for benefits conferred under the CBA. First, the officers' attendance at the grievance proceeding initiated by one of the officers about his performance evaluation was not "work" because the officers controlled and primarily benefited from their attendance. Additionally, the union subpoenaed one of the officers to appear at the proceeding. The CBA explicitly provides that each party must pay "all costs associated with witnesses it may call on its own behalf." The officers' attendance at the grievance proceeding is not "work." Thus, it is not compensable by the town.

■ Second, Caverly's interview for a promotion during his off-duty hours is not "work" under section 7.6 of the CBA. The union

erroneously argues that the town should pay Caverly overtime for his interview because the town called him back to work during his off-duty hours for the interview. Caverly initiated the interview process and would receive the primary benefits of the interview; thus, the interview time is not compensable work within the meaning of section 7.6.

The union also asserts that the town has established a practice of paying officers for their time spent interviewing when the officers are on duty. "Whether time is spent predominantly for the employer's benefit or for the employee's is a question dependent upon all the circumstances of the case." *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944). When officers interview while they are on duty, their job still takes priority over the interview, and the town may require an officer to leave an interview at any time to return to work. Thus, the primary benefit still runs to the town, and the town could conclude that the officers are eligible to be compensated. Accordingly, the union's interpretation is not a plausible reading of the terms of the CBA.

We agree with the town that the board erred in finding that the union's grievances are arbitrable because the CBA is "not susceptible of a reading which would cover [these] dispute[s]." *Appeal of Westmoreland School Bd.*, 132 N.H. at 109, 564 A.2d at 423. "[T]he union takes the contractual language of the CBA provisions it relies on too far out of context for us to conclude that the parties intended to arbitrate [these] dispute[s]." *Appeal of AFSCME Local 3657*, 141 N.H. at 295, 681 A.2d at 103 (quotation and brackets omitted).

■ The board also erred in concluding that the town could not satisfy the positive assurance standard because "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *See id.* at 294, 681 A.2d at 102. Although the positive assurance standard applies in this case, the contract language in the CBA may provide sufficient "forceful evidence of a purpose to exclude the claim from arbitration," *id.*; *cf. Affiliated Food Distributors, Inc.*, 483 F.2d at 420 (determining that preference for arbitration fails when a CBA, "fairly read as a whole, is not susceptible of a construction" binding the parties to arbitrate). We conclude that the town met the positive assurance standard, and thus, we hold that the board erred in concluding that the town breached the CBA and in ordering the parties to arbitrate the grievances.

*Reversed.*

HORTON, J., dissented; the others concurred.

HORTON, J., dissenting: Because I believe the issues on appeal are arbitrable, I respectfully dissent.