Public Employee Labor Relations Board
No. 96-210

### APPEAL OF LINCOLN-WOODSTOCK COOPERATIVE SCHOOL DISTRICT

(New Hampshire Public Employee Labor Relations Board)

June 16, 1999

*Soule, Leslie, Kidder, Zelin, Sayward & Loughman*, of Laconia (*Bradley F. Kidder* on the brief and orally), for the petitioner, Lincoln-Woodstock Cooperative School District.

*James F. Allmendinger*, of Concord, staff attorney, NEA-New Hampshire, by brief and orally, for the respondent, Lin-Wood Education Association, NEA-New Hampshire.

THAYER, J. The petitioner, Lincoln-Woodstock Cooperative School District (district), appeals a decision of the New Hampshire Public Employee Labor Relations Board (board) dismissing its complaint charging the respondent, Lin-Wood Education Association (association), with an unfair labor practice, *see* RSA 273-A:5 (1987). The board ruled that the district failed to carry its burden of proof regarding the arbitrability of a grievance under the collective bargaining agreement (CBA) and, therefore, directed the parties to proceed with arbitration. We affirm in part and reverse in part.

The following evidence was presented to the board. In 1995, David Stolper, a math and science teacher at the district's high school, received an annual summary evaluation from his principal. As part of the evaluation, the principal "[r]ecommended [Stolper] with [r]eservations to [the] Superintendent for renomination." The superintendent notified Stolper by letter that he had been renominated with reservations for the 1995-1996 school year, and "if [he did] not improve [his interpersonal relations] to an acceptable standard, [he would] not be renominated beyond next year." The association, on Stolper's behalf, filed a grievance stating in part that "[i]n the 1994-95 Summary Evaluation Mr. Stolper was recommended for renominat[ion] with reservations . . . without just cause and . . . based on biased, inaccurate and inappropriate information." The grievance made other allegations that are not part of this appeal.

The principal denied the grievance stating that the principal's evaluation and recommendation to the superintendent were not grievable because no violation of the CBA had occurred. The association appealed to the superintendent and included the superintendent's letter of renomination with reservations as part of its

grievance. The superintendent and then the district refused to recognize the association's complaints as grievable. After exhausting all internal procedures, the association informed the district of its intent to submit the grievances to arbitration, pursuant to Article IV of the CBA. The district filed an unfair labor practice complaint with the board. After a hearing, the board ruled that "the dispute regarding Principal Morgan's Summary Evaluation and/or Principal Morgan's recommendation re[garding] the renewal of the grievant" was the proper subject of arbitration under the CBA. The district's motion for rehearing was denied, and this appeal followed.

We will not set aside an order of the board unless it is shown to be contrary to law or, by a clear preponderance of the evidence, unjust or unreasonable. *See* RSA 541:13 (1997); *Appeal of AFSCME Local 3657*, 141 N.H. 291, 293, 681 A.2d 100, 102 (1996). "Findings of fact by the [board] are presumed lawful and reasonable." *AFSCME Local 3657*, 141 N.H. at 293, 681 A.2d at 102.

The district argues that the principal's evaluation and recommendation are not grievable because they do not constitute "disciplinary action" under the CBA. The association counters that because the district failed to show that the principal's evaluation and recommendation coupled with the superintendent's letter did not constitute disciplinary action, the board properly determined the dispute was arbitrable.

Four principles guide the board and this court on appeal in determining whether a dispute is arbitrable under a CBA's arbitration clause:

> (1) arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit; (2) unless the parties clearly state otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator; (3) a court should not rule on the merits of the parties['] underlying claims when deciding whether they agreed to arbitrate; and (4) under the "positive assurance" standard, when a CBA contains an arbitration clause, a presumption of arbitrability exists, and in the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.

*Appeal of Westmoreland School Bd.*, 132 N.H. 103, 105-06, 564 A.2d 419, 420-21 (1989) (quotations, citations, and brackets omitted).

■ We begin by examining the relevant language of the CBA. *See AFSCME Local 3657*, 141 N.H. at 294, 681 A.2d at 102. Because the CBA contains an arbitration clause, a presumption of arbitrability exists. *Westmoreland School Bd.*, 132 N.H. at 105, 564 A.2d at 420. A particular grievance, however, is not arbitrable if we conclude with "positive assurance that the CBA is not susceptible of an interpretation that covers the dispute." *Appeal of Town of Bedford*, 142 N.H. 637, 640, 706 A.2d 680, 682 (1998) (quotation omitted). Further, "the principle that doubt should be resolved in favor of arbitration does not relieve a court of the responsibility of applying traditional principles of contract interpretation in an effort to ascertain the intention of the contracting parties." *Id.* at 640, 706 A.2d at 683 (quotation and brackets omitted).

Article 4.1 of the CBA defines a grievance as "a complaint by a teacher that there has been a violation or misapplication of the provisions of this agreement." The relevant portion of the grievance alleges that the principal's summary evaluation and recommendation for renomination with reservations, along with the superintendent's letter of renomination, were actions "without just cause . . . based on biased, inaccurate and inappropriate information," and therefore violated Article XIII of the CBA.

Article 13.1, in pertinent part, states:

> All reprimands, suspensions, discharges, or disciplinary action shall be for just cause and shall comply with State laws, State Board of Education rules, and School Board rules and policies.

The association argues that the actions of both the principal and the superintendent constituted disciplinary action because they "threaten[ed] an employee with termination if his performance [did] not improve." Therefore, the association contends that Stolper was subject to disciplinary action resulting in a violation of the CBA to the extent that the district acted without just cause.

"Collective bargaining agreements are construed in the same manner as other contracts." *Appeal of Timberlane Reg. School Bd.*, 142 N.H. 830, 834, 713 A.2d 988, 990 (1998) (quotation and ellipsis omitted). Hence, our review of the CBA focuses on the language of the written contract, and we determine the intent of the parties by looking at the agreement taken as a whole and construing its terms according to their common meaning. *See BankEast v. Michalenoick*, 138 N.H. 367, 369, 639 A.2d 272, 273 (1994). Because "disciplinary action" is not otherwise defined in the CBA, we look to its common meaning.

■ "Discipline" is defined as "punishment by one in authority esp[ecially] with a view to correction or training." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 644 (unabridged ed. 1961). Punishment is the "impos[ition of] a penalty . . . for some fault, offense, or violation." *Id.* at 1843 (defining "punish"). The district contends that the principal's evaluation and recommendation to the superintendent do not constitute discipline because punishment was not imposed or intended; rather, the principal's action "was simply notifying Mr. Stolper of four areas where his performance need[ed] improvement." We agree. In the summary evaluation, the principal rated Stolper in fifty-eight areas falling under seven broad performance categories. The potential ratings ranged from commendable to unsatisfactory performance. At the bottom of the form, a space was provided for the principal to make a recommendation to the superintendent regarding renomination. On this evaluation, the principal recommended with reservations Stolper's renomination. The principal also provided detailed observations in a separate document. The principal's role in this instance, therefore, was limited to making observations and recommendations. Because he did not have the authority to nominate, hire, or fire teachers, he did not have the authority to impose termination as a penalty. In order to have taken disciplinary action, the principal would have had to impose a penalty within his authority. The principal did not discipline Stolper by simply making observations in an evaluation and making a recommendation to the superintendent. Because the principal's summary evaluation and recommendation to the superintendent in this case did not constitute disciplinary action under the CBA, we can say with positive assurance that the CBA is not susceptible of an interpretation that covers these actions by the principal.

■ The superintendent, however, does have the authority to nominate teachers to the school board. *See* RSA 189:39 (1989). In his letter of nomination, the superintendent warned Stolper that he would not be renewed beyond next year if his performance in a specific area did not improve. Through the nomination process, the superintendent, unlike the principal, has the authority effectively to terminate Stolper. Consequently, the superintendent had the authority to punish Stolper by not nominating him for renewal next year. We cannot say with positive assurance that this threat of consequences if Stolper failed to modify his behavior does not constitute disciplinary action as set forth in the CBA. Therefore, to the extent Stolper has alleged that the warning contained within his

renomination letter is without just cause, he is entitled to have the issue proceed to arbitration.

Finally, the district argues that the board ignored a previous waiver and acquiescence by the association of the issues grieved. In 1994, the association filed a grievance based on the principal's evaluation and recommendation of Stolper with reservations. The parties dispute whether the prior grievance was settled. The 1994 grievance, however, does not involve any actions by the superintendent. Therefore, in light of our holding, we need not further address this issue.

*Affirmed in part; reversed in part.*

All concurred.