Public Employee Labor Relations Board
No. 97-141

## APPEAL OF THE CITY OF MANCHESTER

(New Hampshire Public Employee Labor Relations Board)

December 8, 1999

*Thomas R. Clark,* city solicitor, of Manchester (*Thomas I. Arnold, III,* assistant city solicitor, and *Daniel D. Muller, Jr.,* staff attorney, on the brief, and *Mr. Muller* orally), for the petitioner.

*Law Offices of Gould & Gould,* of Londonderry (*Edward J. Kelley* and *Kenneth J. Gould* on the brief, and *Mr. Kelley* orally), for the respondent.

BROCK, C.J. The petitioner, the City of Manchester, appeals the decision of the New Hampshire Public Employee Labor Relations Board (board) holding that a grievance filed against it by the respondent, the Manchester Police Patrolman's Association, was arbitrable. We reverse.

The board made the following findings of fact. The petitioner is a public employer within the meaning of RSA 273-A:1, X (1987). The respondent is the duly certified bargaining unit for police officers

employed by the petitioner. The petitioner and the respondent are parties to a collective bargaining agreement (CBA) for the period beginning July 1, 1991, and ending June 30, 1994. Article 30 of the CBA allowed the parties to expressly change or terminate the terms of the agreement. Neither party exercised this option.

In May 1996, the Manchester Police Commission revised the Manchester Police Department's standard operating procedure regarding discipline. Prior to this change, a police officer facing discipline had the opportunity to be heard before a disciplinary hearing board. The revision replaced that hearing with a hearing before the chief of police. On June 5, 1996, the respondent filed a grievance with the petitioner claiming that the revision was a unilateral change that eliminated prior rights of its members. One month later, the respondent filed a demand for arbitration with the American Arbitration Association. The petitioner, in turn, filed an unfair labor practice complaint with the board alleging that the respondent violated RSA 273-A:5, II(f) and (g) (1987) by filing a demand for arbitration contrary to the express provisions of the CBA.

The issue before the board was whether the respondent's grievance was arbitrable. As a preliminary matter, the board found that, although expired, the CBA's provisions remained effective under the principle of maintaining the status quo. *See Appeal of Milton School Dist.*, 137 N.H. 240, 247, 625 A.2d 1056, 1061 (1993). The board found that Article 7 of the CBA allows grievance of a dispute arising out of the application or interpretation of the CBA under express provisions of the CBA and provides for final and binding arbitration. Without addressing the merits of the dispute, the board determined that the arbitration clause was "susceptible of a reading that would cover the dispute and that there has not been a showing, sufficient to satisfy the 'positive assurance' standard, that the parties intended to exclude change in the trial board procedure of the discipline process from arbitration." Holding that the respondent had raised a colorable issue of contract interpretation, the board dismissed the petitioner's unfair labor practice complaint. The board denied the petitioner's motion for rehearing, *see* RSA 541:3 (1997), and this appeal followed.

We will not overturn the board's order unless it is erroneous as a matter of law, or by a clear preponderance of the evidence, the order is unjust or unreasonable. RSA 541:13 (1997); *see Appeal of Londonderry School Dist.*, 142 N.H. 677, 680, 707 A.2d 137, 139 (1998). The determination of whether the parties' dispute is arbitrable is guided by the following four principles:

> (1) arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit . . . ; (2) unless the parties clearly state otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator; (3) a court should not rule on the merits of the parties' underlying claims when deciding whether they agreed to arbitrate; and (4) under the "positive assurance" standard, when a CBA contains an arbitration clause, a presumption of arbitrability exists, and in the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail . . . .

*Appeal of AFSCME Local 3657*, 141 N.H. 291, 293, 681 A.2d 100, 102 (1996) (quotation and brackets omitted).

"We examine first the relevant language of the CBA." *Appeal of Westmoreland School Bd.*, 132 N.H. 103, 106, 564 A.2d 419, 421 (1989). Article 4 of the CBA, entitled "Prior Benefits and Preservation of Rights," provides:

> The Commission agrees that conditions of employment and working conditions previously established as policy of the Commission shall be not less than those now in effect and will remain in effect unless specifically modified by this Agreement. Nothing in this Article will limit the rights of the Commission to revise the Rules and Regulations, policies and/or working conditions to improve the efficiency of the Department, provided, however, any such change or revision shall not be subject to the grievance procedure.

Article 7 defines a grievance as "a claim or dispute arising out of the application or interpretation of this Agreement, under express provisions of the Agreement," and provides for final and binding arbitration.

"Although the primary function of the board and this court is simply to determine whether or not [the respondent] has raised a colorable issue of contract interpretation, without deciding it on the merits, the issue in this case requires an interpretation of the CBA to determine whether the [petitioner and the respondent] have agreed to arbitrate a particular matter." *Appeal of Town of Bedford*, 142 N.H 637, 639, 706 A.2d 680, 682 (1998) (quotation and citation omitted). "Interpretation of a contract, including whether a contract term or clause is ambiguous, is ultimately a question of law for this

court to decide." *Merrimack School Dist. v. Nat'l School Bus Serv.*, 140 N.H. 9, 11, 661 A.2d 1197, 1198 (1995) (quotation and brackets omitted). "A clause is ambiguous when the contracting parties reasonably differ as to its meaning." *Id.* (quotation omitted).

The petitioner argues that Article 4 is an express provision excluding the respondent's grievance from arbitration. The petitioner interprets the first sentence of Article 4 as establishing a general rule that preserves existing rights and benefits to the respondent's members. The second sentence of Article 4, as interpreted by the petitioner, is an express exception to the general rule. This exception excludes from the grievance procedure those changes made to the rules, regulations, policies, and/or working conditions that improve the efficiency of the department. The petitioner contends that the change to the grievance proceedings is such a permissible change.

The respondent, however, argues that the use of the term "provided, however" contained in the second sentence of Article 4 creates a condition precedent. *See* J. CALAMARI & J. PERILLO, CONTRACTS § 11-9, at 448 (3d ed. 1987). The respondent, therefore, interprets Article 4 to allow unilateral changes by the commission only if the changes do not eliminate prior rights or benefits of its members. The respondent argues that a hearing before a disciplinary hearing board constituted a prior right and, therefore, it is entitled to arbitration under the grievance provision of the CBA.

██ "[C]onditions precedent are not favored, and we will not so construe such conditions unless required by the plain language of the agreement." *Holden Eng'g and Surveying v. Pembroke Rd. Realty Trust*, 137 N.H. 393, 396, 628 A.2d 260, 262 (1993). The respondent's interpretation overlooks a requirement of conditions precedent that an act or event is contingent upon performance or occurrence of another act or event. *See* CALAMARI & PERILLO, *supra* § 11-5, at 439. The plain language of Article 4 forecloses the respondent's argument that unilateral changes by the commission are allowed only if the changes do not eliminate prior rights or benefits. We interpret "provided, however" as only adding emphasis to the fact that the changes to the rules and regulations which improve the efficiency of the department are not subject to the grievance procedure. Accordingly, we hold that Article 4 of the CBA is an express provision excluding the petitioner's changes in the discipline proceedings from arbitration.

The respondent's remaining arguments rely on the premise that the second sentence of Article 4 was not an express provision

excluding arbitration. Because we hold otherwise, we need not address the respondent's remaining arguments.

*Reversed.*

BRODERICK, J., did not sit; HORTON, J., dissented; the others concurred.

HORTON, J., dissenting: The majority overcomes the strong presumption of arbitrability by finding "most forceful evidence of a purpose to exclude the claim from arbitration," *Appeal of AFSCME Local 3657*, 141 N.H. 291, 293, 681 A.2d 100, 102 (1996), resulting in "positive assurance" that the claim of the Manchester Police Patrolman's Association was not arbitrable. *Id.* This holding is based on the majority's interpretation of the "Prior Benefits and Preservation of Rights" clause found in Article 4 of the collective bargaining agreement (CBA) between the parties. Since I do not interpret this clause in the same way, I do not think that "positive assurance" exists. Thus I would affirm the New Hampshire Public Employee Labor Relations Board in its arbitration order.

I would read Article 4 in the context of the CBA with the following considerations.

The petitioner argues that the second sentence of Article 4 is an express provision excluding the respondent's grievance from arbitration. The petitioner contends that the change to the grievance proceedings was done to make the disciplinary process more efficient and, therefore, grievances concerning the change are not subject to arbitration. The respondent interprets Article 4 to allow unilateral changes by the commission only if the changes do not eliminate prior rights or benefits of its members. The respondent argues that a hearing before a disciplinary hearing board constituted a prior right and, therefore, it is entitled to arbitration under the grievance provision of the CBA. Additionally, the respondent asserts that Article 4 of the CBA contains no express provision excluding topics from arbitration.

Article 7 of the CBA provides that grievances are arbitrable, and defines a grievance as "a claim or dispute arising out of the application or interpretation of this Agreement, under express provisions of the Agreement." The first sentence of Article 4 states that previously established policies of the Commission relating to conditions of employment shall not be diminished or terminated unless a specific modification is made to the CBA. The CBA thus preserves previously established policies concerning conditions of employment.

The parties do not dispute that prior to the change in the standard operating procedure for disciplinary action, an officer facing discipline had the opportunity to be heard before a disciplinary hearing board. In order for that prior policy to be a right preserved by the first sentence of Article 4, and hence for a dispute concerning that policy to be a grievance subject to arbitration, Article 4 requires the policy to be one affecting the terms and conditions of employment. In *Appeal of the State of New Hampshire*, 138 N.H. 716, 647 A.2d 1302 (1994), the employer and union disputed whether a proposal that "[t]he employer may discipline for just cause" was subject to mandatory bargaining. Addressing the question whether the discipline proposal primarily affected the terms and conditions of employment, we observed that "[d]iscipline unquestionably affects employee welfare by influencing attitudes, productivity, longevity, safety, as well as other aspects of employment." *Appeal of State of N.H.*, 138 N.H. at 723, 647 A.2d at 1307. We stated that disciplinary policy has a significant effect on terms and conditions of employment. *See id.* at 723-24, 647 A.2d at 1307. Our observations concerning the effects of disciplinary policy on terms and conditions of employment apply with equal force to the policy change in this case. The prospect that an officer facing discipline would have his rights adjudicated by the chief of police rather than a hearing board is equally as important to employee welfare as the standard under which discipline is imposed. The disciplinary policy change, therefore, is one affecting the terms and conditions of employment.

The second sentence of Article 4 permits, without grievance, the modification of policies, rules, practices, and working conditions in the interest of efficiency. The exception, however, is far too broad to constitute either express language excluding from arbitration, or the most forceful evidence of an intent to exclude from arbitration, this particular dispute. *See Appeal of Westmoreland School Bd.*, 132 N.H. 103, 105-06, 564 A.2d 419, 420-21 (1989) (express provision must exclude particular grievance from arbitration).

The second sentence of Article 4 resembles an exception that was deemed insufficient to overcome the presumption of arbitrability in the seminal case of *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960). In that case, a CBA provided that differences between the employer and union concerning the CBA's terms, as well as disputes over "any local trouble of any kind," were subject to a grievance procedure. *United Steelworkers of America*, 363 U.S. at 576. The agreement contained an exception providing that "matters which are strictly a function of management shall not be subject to arbitration." *Id.* A labor dispute

arose after management "contracted-out" work and laid off workers. The employer refused arbitration and the union brought suit to compel it. The trial court held that "contracting-out" work was a "function of management" and thus the dispute was not arbitrable. The circuit court of appeals affirmed.

Reversing, the Supreme Court found nothing specific in the CBA to indicate that the parties intended to exclude from arbitration disputes concerning "contracting-out" of work. The court reasoned that "[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad." *Id.* at 584-85. In concluding that the "function of management" exception was vague, the Court observed that

> "[s]trictly a function of management" might be thought to refer to any practice of management in which, under particular circumstances prescribed by the agreement, it is permitted to indulge. But if courts, in order to determine arbitrability, were allowed to determine what is permitted and what is not, the arbitration clause would be swallowed up by the exception.

*Id.* at 584.

Similarly here, almost any policy change might be thought to refer in some sense to the concept of efficiency, and consequently policies affecting terms and conditions of employment could be diminished or terminated by management without specific modification to the CBA and without threat of grievance. Thus, Article 4's primary purpose of preserving prior policies that have not been specifically changed in the CBA would be swallowed by the efficiency exception.

The parties did not include in the CBA an express arbitration exclusion applicable to disputes over disciplinary procedure, which they could have done had they so intended. I question whether the parties intended the efficiency exception to be read so broadly as to apply to the dispute in this case. Where language excluding subject matter from arbitration is so general, broad, or vague that this court is unable to say with positive assurance that a particular dispute is not arbitrable under the CBA, this court should fall back on the strong presumption of arbitrability imposed by law. *See Appeal of Town of Bedford*, 142 N.H. 637, 640, 706 A.2d 680, 682-83 (1998) (doubt should be resolved in favor of arbitration); *Western Iowa Pork Co. v. National Bro. Pack. & Dairy Wkrs.*, 366 F.2d 275, 278

(8th Cir. 1966) (any ambiguity created by broad and general exception must be resolved in favor of arbitration).