Hillsborough-northern judicial district
No. 2000-183

JOHN A. COOKSON COMPANY

v.

NEW HAMPSHIRE BALL BEARINGS, INC. & a.

December 24, 2001

*Wiggin & Nourie, P.A.*, of Manchester (*Jeffrey B. Osburn & a.* on the brief, and *Stephanie A. Bray* orally), for the plaintiff.

*Sheehan Phinney Bass + Green, P.A.*, of Manchester (*Michael C. Harvell* and *Michael J. Lambert* on the brief, and *Mr. Harvell* orally), for the defendants.

DALIANIS, J. This is a dispute between the plaintiff, John A. Cookson Company, and the defendants, New Hampshire Ball Bearings, Inc. (NHBB) and NMB Corporation (NMB), relating to the breach of certain sales representative agreements. The plaintiff appeals decisions of the superior court requiring arbitration of its claims against the defendants and upholding the arbitrator's award. We affirm in part, reverse in part and remand.

The record discloses the following facts. The plaintiff agreed to act as the defendants' sales representative, selling products to companies in the aviation and aerospace industry for a commission. The plaintiff's sales territory was California, Oregon and Washington. It maintained an office in Seattle, Washington.

Originally, the agreements contained a termination clause allowing either the plaintiff or the defendants to terminate the contracts upon sixty days' notice. This provision was amended in August 1992 to allow termination upon eighteen months' notice. In March 1994, the defendants informed the plaintiff that they would terminate the contracts in sixty days and that the plaintiff was not to contact any of the defendants' customers on behalf of other companies. In addition, the defendants limited the products that the plaintiff could continue selling, eliminating approximately eighty percent of its business. As a result, the plaintiff was forced to close its office. The plaintiff filed suit in superior court in July 1996, alleging breach of contract, breach of the covenant of good faith and fair dealing, unfair trade practices, interference with business relationships, and intentional and negligent misrepresentation.

The contract with NHBB contained an arbitration clause, which stated that "[a]ny dispute between the Representative and NHBB, unless relating to the division of commissions, shall be arbitrated in Hillsborough County, New Hampshire at the American Arbitration Association in conformity with the rules of said Association then in effect." Similarly, the contract with NMB provided that "[i]f the parties do not resolve the dispute through mediation within forty-five (45) days of the Initial Notice, then the dispute shall be resolved by binding arbitration conducted in accordance with the rules then in effect of the American Arbitration

Association." The defendants filed a motion to stay proceedings and compel arbitration, which the superior court granted.

Prior to arbitration, the plaintiff moved to amend its suit to include a claim under RSA chapter 339-E (1995), Sales Representatives and Post-Termination Commissions. The arbitrator denied the motion on the ground that the plaintiff did not have standing under the statute. On September 15, 1998, the arbitrator awarded the plaintiff $199,000 in damages representing commissions owed by both defendants. He did not, however, award a separate amount for the tort claims because he concluded that: 1) with respect to damages, the plaintiff's claim for intentional interference with contractual relations was the same as its breach of contract claim; and 2) there was insufficient evidence to support the plaintiff's misrepresentation claims.

In his damages calculation, the arbitrator reduced the plaintiff's total damages of $410,000 by $211,000, the amount the arbitrator concluded the plaintiff saved by not having to perform under the contract. He also determined that the plaintiff failed to introduce any substantive evidence regarding the value of its lost investment or the amount of future lost profits from other prospective customers. The arbitrator also denied the plaintiff interest because the parties' agreements did not contain any provision for the payment of interest.

The plaintiff applied to the superior court for a modification of the arbitrator's award. *See* RSA 542:8 (1997). It argued, among other things, that the arbitrator committed plain mistake by finding that: 1) the plaintiff did not have standing under RSA chapter 339-E; 2) the plaintiff was not entitled to separate damages for the defendants' alleged tortious conduct; 3) the plaintiff's damages should be reduced by $211,000; and 4) the plaintiff was not entitled to interest. The court denied the plaintiff's request and this appeal followed. *See* RSA 542:10.

## I. Requirement of Arbitration

We begin by determining whether the superior court erred in requiring the plaintiff to arbitrate its claims. The scope of an arbitration provision contained in a contract presents a question of law for this court. *See Dunn & Sons, Inc. v. Paragon Homes of New Eng., Inc.,* 110 N.H. 215, 217 (1970). "Such a clause is to be interpreted so as to make it speak the intention of the parties at the time it was made bearing in mind its purpose and policy." *Id.* (quotation omitted). Absent evidence establishing the parties' intent, we consider the face of the plaintiff's writ and the terms of the arbitration provisions contained in the parties' contracts. *See id.* While there is a presumption of arbitrability if the contract contains an arbitration clause, we may conclude that a particular grievance is not

arbitrable if it is determined "with positive assurance that the [contract] is not susceptible of an interpretation that covers the dispute." *Appeal of Town of Bedford*, 142 N.H. 637, 640 (1998).

The plaintiff argues that the plain language of the arbitration provisions reveals that the parties did not intend to arbitrate tort and statutory claims. In support of its position, the plaintiff relies upon *Dunn & Sons, Inc.*

*Dunn & Sons, Inc.* is distinguishable because the arbitration clause in that case was narrower in scope. *See id.* at 218. The arbitration clause in that case was intended to cover "'any dispute or disagreement ... concerning ... the terms ... performance ... breach ... or ... interpretation' of the contract." *Id.* at 218. We construed the arbitration clause as applying only to contract causes of action, not tort claims. *See id.*

■ The arbitration provisions in this case are broader than the clause in *Dunn & Sons, Inc.* The provisions here contain no language limiting their scope to contract claims. "Broad language of this nature covers contract-generated or contract-related disputes between the parties however labeled: it is immaterial whether claims are in contract or in tort ...." *Acevedo Maldonado v. PPG Industries, Inc.*, 514 F.2d 614, 616 (1st Cir. 1975). In fact, the only apparent limitation is contained in the contract with NHBB, which excludes from arbitration any dispute relating to the *division* of commissions. The plaintiff does not contend that any of its claims pertain to the division of commissions.

We conclude, therefore, that the superior court did not err in ruling that all of the plaintiff's claims should be arbitrated. Further, because the plaintiff agreed to arbitrate all of its claims, the superior court did not violate the plaintiff's right to a jury trial by submitting the plaintiff's case to arbitration. *See Lowell v. U.S. Savings Bank*, 132 N.H. 719, 724 (1990) (addressing how party may waive right to jury trial).

■ ■ We next address the plaintiff's arguments regarding the arbitrator's decision. An arbitration decision may be corrected or modified upon a showing that the arbitrator committed "plain mistake." RSA 542:8 (1997). A "plain mistake" is an error that "is apparent on the face of the record and which would have been corrected had it been called to the arbitrator's attention." *Rand v. Aetna Life & Cas. Co.*, 132 N.H. 768, 771 (1990). It must be shown that the arbitrator manifestly fell into such error concerning the facts or law, and that the error prevented his free and fair exercise of judgment on the subject. *Id.* When undertaking a "plain mistake" analysis, we afford great deference to the arbitrator's decision. *Masse v. Commercial Union Ins. Co.*, 134 N.H. 523, 526 (1991). We

examine the face of the record to determine if there is validity to the claim of "plain mistake," and defer to the arbitrator's decision if the record reveals evidence supporting it. *See id.*

*II. RSA Chapter 339-E*

The plaintiff first argues that the superior court erred in finding that the arbitrator did not commit plain mistake when it ruled that the plaintiff did not have standing to bring a claim under RSA chapter 339-E.

RSA chapter 339-E, Sales Representatives and Post-Termination Commissions, provides a cause of action by which "sales representatives" can recover commissions owed by a "principal." RSA 339-E:3. A "sales representative" is defined as "an individual other than an employee, who contracts with a principal to solicit orders . . . ." RSA 339-E:1, III. A "principal" is defined as "a person who manufactures, produces, imports or distributes a product for sale . . . ." RSA 339-E:1, II. The arbitrator concluded that the plaintiff did not have standing under RSA 339-E:1 because a corporation cannot be a "sales representative" for purposes of the statute.

"In statutory interpretation, this court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole." *Appeal of Naswa Motor Inn*, 144 N.H. 89, 90 (1999) (quotation omitted). We begin by considering the statutory language, construing its plain and ordinary meaning, if possible. *See id.* "While legislative history may be helpful in the interpretation of an ambiguous statute, it will not be consulted when the statutory language is plain." *Appeal of Cote*, 144 N.H. 126, 129 (1999) (quotation omitted).

■ The legislature designated a "sales representative" as an "individual" and a "principal" as a "person." An "individual" is generally defined as a "[a] natural person, as distinguished from a corporation." BALLENTINE'S LAW DICTIONARY 613 (3d ed. 1969). On the other hand, RSA chapter 21, entitled "Statutory Construction," provides in part that "[t]he word 'person' may extend and be applied to bodies corporate and politic as well as to individuals." RSA 21:9 (2000); *see also* RSA 21:1 (2000). We "can neither ignore the plain language of the legislation nor add words which the lawmakers did not see fit to include. The legislative intent is to be found not in what the legislature might have said, but rather in the meaning of what it did say." *Appeal of Public Serv. Co. of N.H.*, 141 N.H. 13, 17 (1996). It is proper to presume that the legislature was aware of the difference between these words and chose to use them advisedly when it promulgated RSA 339-E:1. *See id.*

In support of its argument that the legislature intended to include corporations within the definition of "sales representative" under RSA 339-E:1, III, the plaintiff cites *M.S. Kind Associates, Inc. v. Mark Evans Products, Inc.*, 584 N.E. 2d 180 (Ill. App. Ct. 1991). *M.S. Kind Assoc.* is not persuasive, however, because the statute in that case defined a "sales representative" as a "person," not an "individual." *M.S. Kind Assoc.*, 584 N.E.2d at 180. Nevertheless, the plaintiff argues that a "sales representative" should include corporations because it effectuates the overall purpose of the statute, and that to exclude corporations from the definition of "sales representatives" would lead to an absurd and illogical result. *See In re Russell C.*, 120 N.H. 260, 264 (1980). While we recognize that some may question the legislature's reasons for limiting "sales representatives" to natural persons, we are not persuaded that it creates an absurd, unjust, or illogical result.

## III. Tort Damages

The plaintiff next argues that the superior court erred in finding that the arbitrator did not commit plain mistake by refusing to award damages for the defendants' alleged tortious conduct. Specifically, it argues that, based upon the arbitrator's findings, it was entitled to damages for the defendants' interference with business relationships, including its lost investment and loss of future business opportunity resulting from the defendants' bad faith conduct. The plaintiff also asserts that the arbitrator erred by failing to award it enhanced damages based upon the defendants' wanton, malicious and oppressive conduct.

In his ruling addressing the plaintiff's claim for interference with business relationships, the arbitrator concluded:

> The gravamen of the plaintiff's complaint for interference with business relationships is a restatement of its claims for damages flowing from the defendants' breach of the Representative Agreements by modifying the product mix and imposing a 60 day, rather than 18 month termination period. Since the claims are essentially the same, the damages awarded for breach of contract will compensate the plaintiff for whatever injuries it received from the alleged interference.

The superior court determined that, based upon the record before it, the arbitrator did not commit plain mistake in making his ruling. In support of its decision, the court stated that it "has no record of the alleged details regarding the interference with business relationships tort claims, the damages claimed by Cookson under the tort claim, [or] Cookson's lost opportunity to find other clients."

It is well-established that a plaintiff cannot recover multiple awards for the same loss even though it has alleged different theories of recovery. *Phillips v. Verax Corp.*, 138 N.H. 240, 248 (1994). "[A] plaintiff who recovers the full amount of damages for the breach of contract cannot recover damages in tort unless he alleges and proves the existence of additional damages attributable solely to the tort." 22 AM. JUR. 2D *Damages* § 35 (1988).

■ Our review of this issue is constricted by the scant record before us. Because we have no record of the evidence presented to the arbitrator, we too are limited to the findings contained in his award. Having reviewed the arbitrator's award, there is nothing to indicate that the plaintiff alleged any losses other than those already claimed in its breach of contract claim. To that end, the arbitrator did address the plaintiff's claim for damages representing lost investment and business opportunity, and concluded that there was no substantive evidence to support those damages. The plaintiff does not argue that those damages are measured any differently in tort than in contract. There is no indication that the plaintiff raised any other damage claims before the arbitrator.

For this reason, we conclude that the superior court did not err in finding that the arbitrator did not commit plain mistake by denying the plaintiff damages for its claim of interference with business relationships.

*IV. Reduction in Damages*

The plaintiff next argues that the superior court erred in finding that the arbitrator did not commit plain mistake when he reduced the plaintiff's damages by $211,000. Because the plaintiff does not argue that this issue should be addressed differently in the context of a tort, we limit our review to the breach of contract claim.

■■ The goal of damages in actions for breach of contract is to put the non-breaching party in the same position it would have been in if the contract had been fully performed. *See Robert E. Tardiff, Inc. v. Twin Oaks Realty Trust*, 130 N.H. 673, 677 (1988). We have held that if a defendant's breach of contract saves expense to the plaintiff, the plaintiff's total damages will be reduced by the amount of money saved. *Kearsarge Computer, Inc. v. Acme Staple Co.*, 116 N.H. 705, 708 (1976). "Where the contract is one involving sales commissions, the measure of damages for loss of profits is gross commissions less expenses that would have been incurred but for the breach." *Om-El Export Co., Inc. v. Newcor, Inc.*, 398 N.W.2d 440, 444 (Mich. Ct. App. 1986). Fixed overhead expenses, however, which are not reduced because of the breach, are not considered in

calculating the plaintiff's damages. *See F. A. Bartlett Tree Expert Co. v. Hartney*, 32 N.E.2d 237, 240 (Mass. 1941); *Roblin Hope Indus. v. J. A. Sullivan Corp.*, 413 N.E.2d 1134, 1136-37 (Mass. App. Ct. 1980). The rationale for this rule is to prevent the illogical result of reducing a plaintiff's damages for fixed overhead costs that would remain constant, regardless of the particular transaction at issue. *Vitex Manufacturing Corp. v. Caribtex Corp.*, 377 F.2d 795, 798 (3d Cir. 1967).

The plaintiff asserts that the arbitrator erred by reducing its damages because the $211,000 represented fixed overhead expenses. It contends that its office would have served customers in addition to the defendants during the remainder of the eighteen-month termination period, and that these overhead expenses cannot be deducted from an award of lost profits.

■ Nothing in the record indicates that the costs deducted from the plaintiff's damage award were fixed overhead expenses. There is no indication that the plaintiff was transacting business with any companies other than the defendants. Rather, the record reflects that the plaintiff's contractual relationship with the defendants was its sole source of income, and that any overhead costs were directly attributable to that relationship. The arbitrator did find that the plaintiff would have entered into a contract with another company called Space-Lok had the defendants not breached their agreements. However, the arbitrator did not award the plaintiff lost profits because it failed to provide any evidence detailing the prospective relationship, including when the contract with Space-Lok would be signed or how long the contractual relationship would exist. Given the state of the record, it was reasonable for the arbitrator to conclude that any costs incurred by the plaintiff during the remainder of the termination period would have been directly attributable to its contracts with the defendants.

■ Moreover, even assuming that there was sufficient evidence introduced to prove that the plaintiff would have incurred fixed overhead expenses by servicing other customers, the arbitrator did not commit plain mistake in failing to award the plaintiff these damages because it closed its Seattle office. If a plaintiff discontinues its business after the defendants' breach of contract, it is not entitled to recover overhead expenses which it would have incurred had the business continued. *See, e.g., Unique Systems, Inc. v. Zotos Intern., Inc.*, 622 F.2d 373, 379 (8th Cir. 1980). This outcome is logical because by closing its office, the plaintiff avoids having to pay those fixed overhead expenses it would have otherwise incurred if its office remained open. *Morrow-Smith Co. v. Cleveland Tractor Co.*, 145 A. 915, 916 (Pa. 1929). Indeed, to allow the plaintiff to recover the value of overhead expenses it did not incur would be to grant it a double recovery.

*V. Interest*

The plaintiff next argues that the court erred in finding that the arbitrator did not commit plain mistake by failing to award interest on certain commissions. Specifically, it seeks interest for $35,000 in commissions it argues the defendants wrongfully withheld since May 1994, and interest for $40,000 worth of commissions it also argues were wrongfully withheld.

In his decision, the arbitrator stated that "[i]nterest may not be made part of an arbitrator's award unless provided for by the parties in the agreement to be arbitrated or by the parties' agreement to arbitrate." Because the parties' agreements did not contain a provision for the payment of interest on damages for breach of contract, the arbitrator denied the plaintiff interest. The superior court affirmed the arbitrator's decision for the same reason. There is no dispute that the parties did not provide for an award of interest in their agreements.

We have stated that parties to an arbitration agreement may agree, as part of the agreement, whether interest will be awarded and, if so, how that interest will be calculated. *See Major v. Acorn Investment Co.*, 134 N.H. 86, 90 (1991). That case does not stand for the proposition, however, that an arbitrator is precluded from awarding interest unless the parties expressly agree to include interest as part of the award.

█ An arbitrator's jurisdiction over an issue depends upon the voluntary agreement of the parties. *See Appeal of Board of Trustees of U.S.N.H.*, 129 N.H. 632, 635 (1987). Accordingly, we look to the parties' arbitration agreement to determine the scope of the arbitrator's powers in rendering an award. "In the absence of clearly restrictive language, great latitude must be allowed in the framing of an award and fashioning of an appropriate remedy . . . ." 6 C.J.S. *Arbitration* § 107 (1975).

The arbitration provisions here are broadly worded and contain no express language limiting the arbitrator's ability to fashion an award. Given this broad language, we conclude that the arbitrator could have awarded interest as part of his damage award in this case. This conclusion is supported by Rule 43 of the American Arbitration Association Commercial Arbitration Rules, which govern the arbitration in this case, as it provides "[t]he arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties."

█ Moreover, as a matter of common law, we have recognized the general rule that "interest as an element of damages prior to the verdict

for money wrongfully detained is allowed from the time the money is due." *Damasiotes v. Dumas*, 97 N.H. 402, 403 (1952). This rule recognizes that money has a "use value" and, therefore, interest is a legitimate component of damages since it compensates the prevailing party for the lost use of its money. *See* C. MCCORMICK, HANDBOOK ON THE LAW OF DAMAGES § 50, at 205-06 (1935).

██ ██ As a result, we hold that in the context of arbitrations, "arbitrators may include interest in an award unless the parties have expressly provided otherwise in their contract or arbitration agreement." *Gordon Sel-Way v. Spence Bros.*, 475 N.W.2d 704, 711 (Mich. 1991). Because the arbitrator denied the plaintiff interest based upon an error of law, we conclude that the superior court erred by finding that the arbitrator did not commit plain mistake when he denied the plaintiff interest. Therefore, we remand to the superior court with instructions to remand to the arbitrator to determine whether interest should be awarded.

*Affirmed in part; reversed in part; and remanded.*

BROCK, C.J., sat for oral argument but did not take part in the final vote; BRODERICK, NADEAU and DUGGAN, JJ., concurred.