NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Carroll
No. 2017-0673


GRAND SUMMIT HOTEL CONDOMINIUM UNIT OWNERS' ASSOCIATION

v.

L.B.O. HOLDING, INC. d/b/a ATTITASH MOUNTAIN RESORT

Argued: June 27, 2018
Opinion Issued: September 18, 2018


Ramsdell Law Firm, P.L.L.C., of Concord (Michael D. Ramsdell on the brief and orally), for the plaintiff.


Devine, Millimet & Branch, Professional Association, of Manchester (Thomas Quarles, Jr. and Brendan P. Mitchell on the brief, and Mr. Mitchell orally), for the defendant.


BASSETT, J. The plaintiff, the Grand Summit Hotel Condominium Unit Owners' Association (Association), filed claims against the defendant, L.B.O. Holding, Inc. d/b/a Attitash Mountain Resort (Attitash), arising from Attitash's alleged failure to maintain a cooling tower at the Grand Summit Hotel and Conference Center (Condominium) in Bartlett. Attitash moved to dismiss the Association's claims, arguing that they were barred by a provision, which required arbitration of certain disputes, in a management agreement (the

Agreement) between the parties.  The Trial Court (Ignatius, J.) denied Attitash's motion to dismiss, ruling that the Association's claims fall outside of the scope of the provision.  The trial court subsequently approved this interlocutory appeal.  See Sup. Ct. R. 8.  We affirm and remand.

The following facts are drawn from the interlocutory appeal statement.  The Association is comprised of the residential and commercial owners of the Condominium.  It is responsible for managing, or arranging for the management of, the Condominium.  To fulfill that obligation, the Association hired Attitash to manage the property under the terms of the Agreement.  Under the Agreement, the Association agreed to pay the "Actual Costs" of operating the Condominium, which the Agreement defines, in part, as "the total cost to [the] Manager of operating the Condominium" including "all costs, charges, and expenses of every kind and description fairly attributable to the operation, management or maintenance of the Association."  As manager of the Condominium, Attitash has assumed the responsibility to arrange and supervise all repairs, replacements, and maintenance, and to "[n]egotiate and enter into on behalf of the Association such service and maintenance contracts as may be required . . . including . . . contracts for . . . equipment maintenance."

Between 2011 and the spring of 2013, Attitash retained a commercial heating and cooling contractor to provide maintenance of the Condominium's heating and cooling system, including winterizing the cooling tower each fall.  However, Attitash failed to enter into a contract with that contractor — or with any other contractor — to provide winterizing services in the fall of 2013, and the cooling tower was not properly winterized for the winter of 2013-2014.  In the spring of 2014, the contractor inspecting the cooling system discovered that it had been damaged during the winter and was unfit for use.

Shortly thereafter, Attitash informed the Association of the damage and represented that, although it had entered into a maintenance contract for the cooling tower that covered the fall of 2013, the contractor had failed to winterize the cooling tower.  Attitash subsequently represented to the Association that the cooling tower had failed because it had reached the end of its useful life.  During the summer of 2014, Attitash rented a temporary cooling tower.  In anticipation of the summer of 2015, it arranged to have the damaged cooling tower repaired.  Attitash incurred more than $200,000 in costs, which the Association paid.

In 2016, the Association filed this action asserting claims against Attitash for breach of contract, breach of the covenant of good faith and fair dealing, negligence, and violation of the Consumer Protection Act.  Attitash moved to dismiss, arguing that the suit was barred because the Agreement contains a provision that requires arbitration for disputes over "Actual Costs."  The disputes provision states:

The [Association] shall have thirty (30) days from the rendition of a statement by [Attitash] for both the Management Fee or of the Actual Cost within which to protest the nature, amount or method by which such amount was determined. If the matter cannot be resolved by the parties within thirty (30) days thereafter, it shall be rendered to an independent public accountant for a decision, which decision shall be binding on both parties.

The trial court denied Attitash's motion, concluding that the provision does not "require[] mandatory arbitration for all matters leading to the actual costs that were incurred in this case." The trial court further ruled that review by an accountant "would not be appropriate for disputes involving contract negotiation, representations made by the contracting parties, disputes over the effective date of a contract, compliance with the terms of a contract, inadequate work performed by [Attitash], and other assertions made by [the Association]." This interlocutory appeal followed.

Our standard of review on a motion to dismiss is "whether the allegations in the plaintiff's pleadings are reasonably susceptible of a construction that would permit recovery." Lamprey v. Britton Constr., 163 N.H. 252, 256 (2012). We "assume the plaintiff's allegations to be true and construe all reasonable inferences in the light most favorable to [the plaintiff]." Id. Our threshold inquiry involves testing the facts alleged in the pleadings against the applicable law. Id. Dismissal is appropriate "[i]f the facts pled do not constitute a basis for legal relief." Beane v. Dana S. Beane & Co., 160 N.H. 708, 711 (2010) (quotation omitted). In making our determination, we may also consider documents attached to the plaintiff's pleadings, or "documents the authenticity of which are not disputed by the parties, official public records, or documents sufficiently referred to in the [complaint]." Ojo v. Lorenzo, 164 N.H. 717, 721 (2013) (quotation and brackets omitted).

As a threshold matter, Attitash argues that this dispute should be governed by the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16 (2012). The Association disagrees, arguing that this dispute is governed by RSA 542:1 (2007), in part, because the Agreement "expressly provides that it is governed by New Hampshire law." We note that, in pleadings filed in advance of the hearing on the motion to dismiss, Attitash did not argue that the trial court should apply federal law. To the contrary, Attitash relied exclusively on state law. The trial court, when ruling on the motion to dismiss, did not rely on federal law. Only when Attitash requested that the trial court transfer an interlocutory appeal did it argue — for the first time — that the FAA controls.

We assume, without deciding, that this choice of law issue is properly before us. However, we need not decide whether federal or state law controls because, in regard to the issues on appeal, federal and state law are the same. Indeed, in its brief, Attitash acknowledges that the "New Hampshire

3

[a]rbitration [s]tatute [m]irrors the FAA and [r]equires the [s]ame [r]esult." (Bolding omitted.)  Under both federal and state law, a presumption of arbitrability applies to arbitration clauses.  See John A. Cookson Co. v. N.H. Ball Bearings, 147 N.H. 352, 355 (2001); Granite Rock Co. v. Teamsters, 561 U.S. 287, 301-02 (2010).  That presumption is, however, rebuttable.  See N.H. Ball Bearings, 147 N.H. at 355-56; Granite Rock, 561 U.S. at 301.  Further, under both federal and state law, the presumption of arbitrability "does not relieve a court of the responsibility of applying traditional principles of contract interpretation in an effort to ascertain the intention of the contracting parties." Appeal of Town of Bedford, 142 N.H. 637, 640 (1998) (quotation omitted); see also Granite Rock, 561 U.S. at 301-02 (observing that the Court has never held that the presumption in favor of arbitration "overrides the principle that a court may submit to arbitration only those disputes [that] the parties have agreed to submit" (quotation and ellipsis omitted)).  Accordingly, because federal and state law are the same in regard to the issues on appeal, we refer to and rely upon both bodies of law and do not engage in separate analyses.

Attitash next argues that, because the provision at issue is an arbitration clause, the presumption in favor of arbitrability applies.  See N.H. Ball Bearings, 147 N.H. at 355; Granite Rock, 561 U.S. at 301-02.  The Association counters that, because the provision does not, in fact, provide for a process akin to the arbitration procedure described in Superior Court Civil Rule 33, it does not constitute an arbitration clause, and therefore the presumption does not apply. Alternatively, the Association argues that, even if we deem the provision to be an arbitration clause, and therefore the presumption is triggered, its claims fall outside of the scope of the provision.  We conclude that, even if the provision is construed to be an arbitration clause, the Association's claims are not within the scope of the provision.  Therefore, for the purposes of our analysis, we will assume without deciding that the provision is an arbitration clause and that the presumption in favor of arbitrability applies.

Finally, Attitash argues that the Association's claims come within the scope of the provision because the Association, by alleging that Attitash should bear the cost of the damage to the cooling tower, is disputing the "nature" of an Actual Cost.  Attitash asserts that the Association was, therefore, required to comply with the process set forth in the provision: protest the nature, amount or method of the Actual Cost within 30 days from the rendition of the statement and then, if the parties cannot resolve the matter within a subsequent 30-day period, submit the dispute to an accountant for a binding decision.  Attitash argues that, because the Association did not protest the costs within the time frame set forth in the disputes provision, the Association's claims are now time-barred.

The Association counters that the provision does not apply because its claims do "not challenge the nature, amount or method" by which the Actual Costs related to the cooling tower were calculated.  Rather, the Association

4

argues that its claims arise from Attitash's misconduct — Attitash's failure to properly maintain the cooling tower, and Attitash's subsequent misrepresentations to the Association about the cause of the damage — and, therefore, fall outside the scope of the provision.  We agree with the Association.

Interpretation of the scope of an arbitration agreement presents a question of law for this court.  See N.H. Ball Bearings, 147 N.H. at 355; IOM Corp. v. Brown Forman Corp., 627 F.3d 440, 450 (1st Cir. 2010).  In interpreting the scope of an arbitration clause, we examine the parties' intent.  See N.H. Ball Bearings, 147 N.H. at 355 (stating that an arbitration clause should be interpreted "to make it speak the intention of the parties at the time it was made bearing in mind its purpose and policy" (quotation omitted)); Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 682 (2010) (stating that, when interpreting an arbitration clause, courts "must give effect to the contractual rights and expectations of the parties" and that "as with any other contract, the parties' intentions control" (quotations omitted)).  Indeed, parties are generally free to structure their arbitration agreements as they see fit.  See Stolt-Nielsen, 559 U.S. at 664; Rizzo v. Allstate Insurance Company, 170 N.H. ___, ___, 185 A.3d 836, 841 (2018).  We determine the parties' intent regarding the scope of an arbitration clause by applying traditional principles of contract interpretation to the terms of the provision.  See Appeal of Town of Bedford, 142 N.H. at 640; Volt Info. Sciences v. Leland Stanford Tr. U., 489 U.S. 468, 475-76 (1989).  Further, in determining whether a claim falls within the scope of an arbitration clause, we focus on the substance of the factual allegations, not the legal theory asserted.  See Dunn & Sons, Inc. v. Paragon Homes of New Eng., Inc., 110 N.H. 215, 217 (1970); Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 846 (2d Cir. 1987).

Attitash argues that the Association's claims fall within the scope of the provision because they arise from a dispute about the "nature" of the Actual Costs incurred due to the cooling tower damage.  The Agreement does not define "nature."  Attitash argues that a dispute about the "nature" of an "Actual Cost" is a disagreement as to "its essential character or constitution — i.e., whether it is . . . fairly attributable to the operation, management or maintenance" of the Condominium.  Attitash asserts that the Association — in claiming that Attitash should pay for the cost of the cooling tower rental and repair — is challenging whether the expenses are "fairly attributable" to the costs of operation, and, therefore, the Association was contractually required to follow the process outlined in the disputes provision.  Although we agree with Attitash as to the meaning of the term "nature" as used in the Agreement, we nonetheless conclude that the Association's claims do not fall within the scope of the provision.

The Association does not dispute that the expenses incurred because of the cooling tower damage were, in fact, "Actual Costs."  Instead, the

Association's complaint is premised on the following factual allegations: after Attitash failed to ensure that the cooling tower was properly winterized in the fall of 2013, the tower was damaged, and Attitash made misrepresentations to the Association about the cause of the damage. Thus, the Association is not challenging the "nature" of an Actual Cost — that is whether the cooling tower expenses were fairly attributable to the operation, management or maintenance of the Condominium — rather it is claiming that the proper measure of its damages attributable to Attitash's alleged wrongdoing is the cost of the tower rental and repair.

In further support of its argument that the Association's claims fall within the scope of the provision, Attitash relies upon the reasoning of the Second Circuit Court of Appeals in Genesco, which held that "[i]f the allegations underlying the claims 'touch matters' covered by the parties' . . . agreements, then those claims must be arbitrated, whatever the legal labels attached to them." Genesco, 815 F.2d at 846. Attitash asserts that the Association's claims come within the scope of the provision because "the claims do not just 'touch matters' [covered by the provision], but are based on the 'Actual Costs' of the cooling tower rental and repair." We are not persuaded.

Genesco is distinguishable because the arbitration clause at issue in that case subjected to arbitration all claims and disputes arising out of, or relating to, the parties' agreement. See id. at 845 (quoting language of two arbitration clauses at issue as subjecting to arbitration "[a]ll claims and disputes of whatever nature arising under this contract" and "[a]ny controversy arising out of or relating to this contract"). By contrast, the provision here requires only that those disputes concerning "the nature, amount or method by which such [Actual Cost] was determined" be resolved by an independent third party. Had the parties intended the scope of the provision to be more expansive, they could have so provided. See, e.g., State v. Philip Morris USA, 155 N.H. 598, 604 (2007) (observing that an arbitration clause providing that "any dispute, controversy or claim arising out of or relating to calculations performed by or any determinations made by, the Independent Auditor" was "broad" (brackets omitted)).

Under these circumstances, the presumption in favor of arbitrability does not override the intention of the parties — as expressed by the Agreement's plain language — that the disputes provision be narrow in scope. Given the language of the provision at issue here, and the fact that the Association does not dispute the nature of Actual Costs, but, rather, seeks damages caused by Attitash's misconduct, we conclude that the Association's claims fall outside the scope of the provision.

We note that each party argues that "accountant remedy" cases from other jurisdictions support its position. An "accountant remedy" provision is an agreement to submit a limited class of disputes — typically disputes

6

regarding calculations required elsewhere in a contract — to an accountant for resolution. See, e.g., Fit Tech, Inc. v. Bally Total Fitness Holding, 374 F.3d 1, 6, 8 (1st Cir. 2004). Although we do not rely upon the "accountant remedy" cases to reach our conclusion, we find the cases instructive.

For example, in Fit Tech, the First Circuit Court of Appeals held that an "accountant remedy" provision in the parties' asset purchase agreement subjected to arbitration only those claims arising from the defendant's improper calculation of earnings owed to the plaintiffs, and did not require arbitration of claims premised upon the defendant's wrongful conduct designed to reduce the plaintiffs' earnings. Id. at 4, 8. In reaching that conclusion, the court relied upon the narrow language of the arbitration clause and the fact that it referred disputes to an accountant. Id. at 8. The court observed that it would not make sense to assume that accountants would be entrusted with certain types of disputes because no one would "expect accountants to have special competence in deciding whether business misconduct unrelated to accounting conventions was a breach of contract or any implied duty of fair dealing." Id. Other courts have similarly concluded that narrow arbitration provisions that entrust accountants to resolve accounting disputes do not require all legal claims to be resolved by arbitration. See Harker's Distribution v. Reinhart Foodservice, 597 F. Supp. 2d 926, 935-36, 942 (N.D. Iowa 2009) (holding under Illinois law that an "accountant remedy" provision required arbitration of only "accounting" issues and did not reach other legal issues, such as whether there had been a mutual or unilateral mistake as to certain contract terms); Powderly v. MetraByte Corp., 866 F. Supp. 39, 43 (D. Mass. 1994) (denying defendants' motion to compel arbitration where the plaintiff's "allegations challenge[d] the defendants' business practices . . . and not the integrity of the accounting techniques used"); Parker v. Twentieth Century-Fox Film Corporation, 173 Cal. Rptr. 639, 643-44 (Ct. App. 1981) (holding that an arbitration clause that required arbitration by accountant of certain disputes was "far too narrow" in scope to encompass most of the plaintiffs' claims). These cases provide further support for our conclusion that the disputes provision in the Agreement — which refers disputes about the nature, amount, or method of determining an Actual Cost to an accountant — does not encompass the Association's claims, which are based upon allegations of misconduct.

We conclude that the trial court properly ruled that the Association's claims are outside the scope of the arbitration provision.

Affirmed and remanded.

LYNN, C.J., and HICKS, HANTZ MARCONI, and DONOVAN, JJ., concurred.

7